## McPherson *et al.* v. Fargo.

1. Where a vendor's contract for the sale of real estate acknowledges the receipt of a consideration, he is estopped to deny the same for the purpose of defeating his contract.

2. In an action by a purchaser to compel specific performance by a vendor of his contract of sale, the question of whether or not the purchaser assented to the terms of the contract is one of law for the court to determine from the facts in the case.

3. The terms of a sale of realty agreed on between a vendor and purchaser were embodied in a written agreement, executed by the vendor, and left with the purchaser with the understanding that it should be signed by him also. It was not signed, but was accepted and placed on record by the purchaser. *Held,* that his omission to sign the same, whether by inadvertence or otherwise, did not relieve him from liability under the agreement.

4. Comp. Laws, § 3617, providing an agreement for the sale of realty must be in writing, and subscribed by the party to be charged, does not relate to the purchaser, who becomes bound to pay the price by the acceptance of the deed or contract, but only requires the vendor to sign to be charged, where there is not a part performance.

5. Comp. Laws, § 4630, providing that a party who has signed a written contract may be compelled specifically to perform it, though the other has not signed it, if the latter has performed, or offers to perform, applies to a vendor of realty who has executed to his purchaser a contract of sale, the conditions of which the purchaser who did not sign the same offers to perform.

6. Where the terms of a contract of sale were agreed upon between a vendor and purchaser, and the same was signed by the vendor, and left with the purchaser, with the understanding that he should sign it also, but no time for his execution of the same was fixed, before the vendor can withdraw he must first request the purchaser to execute the agreement, and give him a reasonable time in which to do so.

7. Where a party to a contract, to whom a tender is due, notifies the other that he would no longer be bound by the contract, no tender is required from the other as a condition to a suit for specific performance.

(Opinion filed, April 5, 1898.)

Appeal from circuit court, Lawrence county. Hon. A. J. Plowman, Judge.

Specific performance.   Defendant had judgment and plaintiff's appeal.   Reversed.

The facts are stated in the opinion.

*William R. Steele,* for appellant.

*Martin & Mason,* for respondent.

CORSON, P. J.   This was an action to enforce the specific performance of a contract for the sale of certain real property in the city of Deadwood.   The trial was by the court, and judgment was entered for the defendant, and the plaintiffs appealed.

The only errors assigned, discussed by counsel for appellants in his brief, are that the court erred in its conclusions of law and in entering judgment for the defendant, and these are the only errors necessary to be considered on this appeal.   The question presented, therefore, is, should the court, upon its findings of fact, have stated its conclusions of law in favor of the plaintiffs, and entered judgment thereon in their favor?

The material facts found may be briefly stated as follows: On February 8, 1890, and for some days prior thereto, the defendant, Fargo, the owner of the property in controversy, and plaintiff McPherson, had negotiations in reference to a sale of property, and on the last-mentioned day, the terms having been agreed upon, a lawyer was employed to draw up the contract; and on the 10th day of February the contract was signed and acknowledged by said Fargo, "and left in the hands of McPherson, with the understanding on the part of said Fargo and McPherson that the contract should be thereupon signed by the plaintiffs; that the alleged contract was not signed by the plaintiffs at that time, nor until April 7, 1890, and the said contract was not * * * assented to or agreed to by them at the time or until April 7, 1890;" "that on the 10th day of February * * * said instrument was placed upon record by plaintiff McPherson, but without the knowledge or direction of the plaintiff Franklin or defendant, Fargo; that on the 7th day of April, 1890, at 1 o'clock p. m., ,the said instrument was by

the plaintiffs, without the knowledge or consent of the defendant, signed and acknowledged, and upon the same day again placed upon record." The court further finds that, on the forenoon of the 7th day of April, the plaintiff McPherson, without the direction or consent of the defendant, placed the sum of $6,000 (the amount specified in the contract to be paid) in the First National Bank of Deadwood to the credit of the defendant, and that notice of such deposit was at once mailed to said defendant, who received the same in the afternoon of the same day; that on April 1st the defendant learned that said contract had not been signed by the plaintiffs, and on April 7th, at 12:20 o'clock p. m., he notified the plaintiffs that he would not consent to be longer bound by said contract; that on June 14th the plaintiffs tendered to a clerk in defendant's store, at Deadwood, $6,000; that at that time the defendant resided at Hot Springs, Fall River county, and had resided there since June 6th. The court also finds that there was no consideration for said contract. It will thus be seen the contract was executed by defendant on February 10th, and recorded by McPherson on the same day; that, on the forenoon of April 7th, $6,000 was deposited to the credit of the defendant, of which he received notice in the afternoon of that day; that at 12:20 p. m. the defendant notified the plaintiffs that he would not longer be bound by the contract, and that at 1 p. m. the plaintiffs executed the contract, and caused the same to be recorded. This action was commenced in July, 1890, but was not argued in this court until January, 1897.

The learned counsel for the appellants contends that, as the contract recites and acknowledges the receipt of a consideration, the defendant is estopped from denying the receipt of such consideration for the purpose of defeating the contract; and the fact of the consideration being so received appearing by the contract made a part of the complaint, which is admitted by the answer, the court's finding was unauthorized, and must be disregarded by this court. We are of the opinion that by

the recital of a consideration, and acknowledgement of the receipt thereof in the contract, the defendant is estopped from denying the payment of the same for the purpose of defeating this action, and the court's finding upon that question must be disregarded by this court. The recital and acknowledgement of the receipt is in the contract made a part of the pleadings. The pleadings, on an appeal from the judgment, are always before the court for review in connection with the findings and judgment. If, therefore, the defendant was estopped from denying the payment of a consideration, the receipt of which is acknowledged in the contract, the court was not authorized to make a finding in conflict with such admission. Mr. Washburn, in his work on Real Property, says: "It is believed that, however the cases may conflict, they all agree, in effect, in this: that it is not competent to prove that no consideration has been paid where one has been acknowledged in the deed, for the purpose of impeaching the validity of the deed, unless it is for the purpose of establishing fraud against the grantor. The true doctrine is stated in Grout v, Townsend, 2 Hill 554, that, where the deed acknowledges the receipt of a consideration, the grantor, and all claiming under him, are estopped from denying that one was paid for the purpose of destroying the effect and operation of the deed, although they may disprove the payment for the purpose of recovering the consideration money." 3 Washb. Real Prop. (5th Ed.) 400, 401; McCrea v. Purmort, 16 Wend. 460; Ballard v. Walker, 3 Johns. Cas. 64; Bank v. Housman, 6 Paige, Ch. 535; Lawrence v. McCalmont, 2 How. 452.

But in this case the plaintiffs agreed to pay for the property $6,000 by the terms of the contract accepted by them, and which by their acceptance, with the provision therein that they "covenant and agree to pay to said party of the first part, his heirs, executors, administrators, and assigns, the further sum of six thousand dollars," became binding upon them, as will more fully appear in the course of this opinion. There was

therefore not only a valuable consideration, but full and ample consideration, appearing by the record, which was binding upon the trial court and conclusive in this case.

The counsel for appellants further contend that the question of whether or not the plaintiffs assented to the terms of the contract is one of law, to be determined by the court from the facts found in the case, and that the court's finding that they did not assent to it is purely a legal conclusion, and not the finding of a fact. We are of the opinion that the counsel is correct in this contention. This court is at liberty, therefore, to review the facts found, and determine therefrom whether or not the acts of acceptance on the part of the appellants did constitute in law such an assent as would bind them to perform the covenants and agreements contained in the contract to be by them performed. What, then, was the effect of the acceptance of the contract by McPherson and placing the same upon record? The appellants contend that the plaintiffs thereby became bound by the terms of the contract, and that the failure to execute it on their part does not prevent them from enforcing it as against the defendant. The respondent, on the other hand, insists that, as the agreement was left with McPherson upon the understanding that it should be executed by the plaintiffs, and it not having been executed by them until after the respondent notified them he would not be longer bound by the contract, it never became a binding contract as between them. Conceding the rule to be as stated by respondent, in ordinary contracts, it seems to be well settled that this class of contracts constitutes an exception, and that the acceptance of the contract is, in effect, an agreement on the part of the vendees to perform the stipulations in the contract which they have agreed or covenanted to perform. It is clear, from the findings in this case, that the terms of the sale were agreed upon between McPherson and Fargo, and the contract embodied these terms, and was satisfactory to them. That being so, the agreement, when executed and left with McPherson,

and accepted by him and placed on record, bound Fargo and the plaintiffs—Fargo, for the reason that he had executed it and did not intend to further exercise control over it, and the plaintiffs, because in law they accepted it by placing it upon record. The omission of the plaintiffs to execute it, whether by inadvertence or otherwise, would not relieve them from their liability under the agreement. Grove v. Hodges, 55 Pa. St. 504; Swisshelm v. Laundry Co., 95 Pa. St. 370; Appeal of Born (Pa. Sup.) 19 Atl. 339; Railroad Co. v. Babcock, 6 Metc. (Mass.) 356; Harlan v. Gas Co., (Ind. Sup.) 32 N. E. 931; Railway Co. v. Fisher, (Ind. Sup.) 24 N. E. 757; Vassault v. Edwards, 43 Cal. 465; Vilas v. Dickenson, 13 Wis. 546; Lowber v. Connit, 36 Wis. 182; Gale v. Nixon, 6 Cow. 445; Ross v. Parks, (Ala.) 8 South. 368.

The counsel in his brief says, and we think correctly, that "the proposition that the purchaser becomes bound to pay the purchase price, by an acceptance of the deed or contract, results from the fact that there is no requirement of law that his agreement shall be in writing. His parol promise to pay binds him. It is only the party to be charged who must sign to satisfy the requirements of the statute of frauds. At common law, a parol agreement for the sale of lands was sufficient to bind both parties, until the enactment of the statute of Charles II., for the prevention of frauds and perjuries, which required that some note or memorandum of the agreement should be in writing, signed by the party to be charged, or his agent thereunto authorized. Our own statute provides that 'all contracts may be oral, except such as are specially required by statute to be in writing.' " Sec. 3542, Comp. Laws. But, if the foregoing view is not correct, in this state only the party to be charged is required to sign the agreement under our statute of frauds. Sec. 3617, Comp. Laws, reads as follows: "No agreement for the sale of real property, or of an interest therein, is valid, unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged,

or his agent thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof."

And the same rule is applied to cases of specific performance by Sec. 4630, which reads as follows: "A party who has signed a written contract may be compelled specifically to perform it, though the other has not signed it, if the latter has performed, or offers to perform it on his part, and the case is otherwise proper for enforcing specific performance." Sec. 3617 is substantially a copy of the English statute of frauds known as the statute of Charles II., which has been re-enacted by most of the states of the Union. In speaking of this statute, Mr. Pomeroy, in his work on Contracts (Sec. 75,) says: "From the language of the provision that the agreement or memorandum thereof shall be signed by the party to be charged therewith, the rule is settled in England, and has been generally followed in this country, that, so far as the statute of frauds affects the contract, a signing by both parties is not necessary, but it is sufficient if the agreement or memorandum is signed by the party against whom it is enforced." Sec. 4630 embodies the law as laid down in Sec. 736a, 1 Story, Eq. Jur. The section reads as follows: "But it is not necessary to the specific performance of a written agreement that it should be signed by the party seeking to enforce it. If the agreement is certain, fair, and just in all its parts, and signed by the party sought to be charged, that is sufficient. The want of mutuality in the signature merely is no objection to its enforcement." The author of that work cites Woodward v. Aspinwall, 3 Sandf. 272; *In re* Hunter, 1 Edw. Ch. 1; M'Crea v. Purmort, 16 Wend. 460; Clason v. Bailey, 14 Johns 484; and the same cases are referred to by the commissioners of the proposed New York Code Civ. Proc. § 1891, from which our Sec. 4630 is copied. Moses v. McClain, (Ala.) 2 South. 744; Welch. v. Whelpley, (Mich.) 28 N. W. 745; Ross v. Parks, (Ala.) 8

South. 368; Woodruff v. Woodruff, (N. J. Ch.) 16 Atl. 7; Smith v. Fleek's Appeal, 69 Pa. St. 480; Robinson v. Cheney, 17 Neb. 679, 24 N. W. 378; Miller v. Cameron, (N. J. Ch.) 15 Atl. 843; Railroad Co. v. Evans, 6 Gray 32; Ives v. Hazard, 67 Am. Dec. 502; Davis v. Robert, (Ala.) 8 South. 115.

As before stated, the law as applied to cases arising under the statute of frauds and under the law of this state relating to specific performance constitutes an exception to the general rule that there must be mutuality in contracts, and that such mutuality is an indispensable requisite to the granting of relief. Will. Eq. Jur. p. 268. The cases cited by respondent are cases enunciating the general rule, and have no application to this case, which, under our Code and the decisions, comes clearly within the exception to the general rule. JUDGE WILLARD, in his work above referred to (page 268) says: "The only exception to the rule with respect to mutuality is when the agreement, under the statute of frauds, has only been executed by the party sought to be charged. In this class of cases, although the plaintiff has not signed the agreement, * * * yet he can enforce it against the other party by whom it has been executed. This seems to be well settled by the English and American cases." In the case at bar, however, we are of the opinion that the contract could have been enforced against the plaintiffs. It was not an ordinary optional or unilateral contract, but the plaintiffs expressly covenanted and agreed to pay the respondent $6,000 and pay certain taxes on or before a specified day. They accepted the contract, and placed it upon record, and they therefore became bound to perform the contract according to its express terms. When, therefore, the contract was signed and acknowledged by the respondent, and left with Mr. McPherson with the understanding that he and Franklin should execute it, their failure to execute it did not release the respondent from his agreement. The acts of respondent did not constitute a mere proposal on his part, but constituted a binding contract on his part as soon as accepted and placed on

record by McPherson, who may, in the absence of any finding to the contrary, be presumed to be acting for himself and co-appellant, Franklin. The terms of the contract had all been agreed to, and, so far as the record discloses, the terms were fair and just, and understood by both parties. The court does not find that there was an agreement that the contract was to be signed by appellants, but only that it was understood between them that the contract was to be signed by appellants. Assuming that that was the understanding, no time was fixed within which the contract was to be executed by appellants, and before the respondent could withdraw from his agreement, if he had the right to withdraw, he would be required to request them to execute the agreement, and give them a reasonable time in which to comply with the request. This would seem to be a reasonable rule, and is sustained by authority. Pom. Cont., note to page 111. As will have been observed, no request of that kind was made by the defendant.

The respondent further contends that there was no sufficient tender of the $6,000. But under the finding that defendant, on April 7th, notified the plaintiffs that he would no longer be bound by the contract, which notice was never recalled, no tender was required on the part of the plaintiffs. Secs. 3443, 3469, 3474, 3482, Comp. Laws. It is not necessary, therefore, for us to decide in this case whether or not the tender was sufficient, or as to the effect of the deposit in the First National Bank on the morning of April 7th.

From these views, it follows that the court erred in its conclusions of law and that the judgment is erroneous. The judgment of the circuit court is reversed, and that court is directed to enter judgment in favor of the plaintiffs, and against the defendant, for a specific performance of the contract set out in the complaint, in conformity with the opinion of this court.