## LUCE v. ASH.

A stipulation is inoperative if it be an attempt to determine the law properly applicable to the stipulated facts.

Where land was listed with a real estate broker to be sold at $19 per acre, there being no agreement as to his commission, and, after various negotiations, the owner agreed to accept a lesser price and to pay the broker a stated commission, a contract of sale at a greater price per acre, the method of payment being the same, was a sufficient compliance with the agreement to entitle the broker to his stipulated commission, but no more.

Land was listed with a real estate broker at a stated price per acre; there being no agreement as to the commission. After some negotiations the owner agreed to accept a less price per acre and to pay a stated commission. A certain amount was to be paid in cash and the balance by a mortgage. The broker made a contract at an advanced price, and of this he did not inform the owner. The agreement was not carried out, as the owner had, unknown to the broker, sold the land in question. **Held,** that as the knowledge of the excess must have come to the notice of the owner when the transaction was consummated, even if the broker intended to demand an additional commission, though he was not legally entitled to it, yet he was not guilty of fraud within Civ. Code, § 1203, providing that fraud is a question of fact, and must be deducible from the evidence.

The owner of two parcels of land listed them for sale with a real estate broker. After some months the broker wrote the owner, refering to one tract. While the owner had in fact sold this tract some time before, he did not notice that the description referred to it and allowed the broker to secure a buyer. **Held,** that his mistake

was not such a mistake as would prevent the broker from recovering his stipulated commission.

(Opinion filed, October 3, 1911.)

Appeal from Circuit Court, Beadle County. Hon. CHAS. S. WHITING, Judge.

Action by O. A. Luce against James C. Ash. From a judgment for defendant, plaintiff appeals. Reversed, with directions.

*Elrod & Dunham,* for appellant.

That the court as well as the parties are bound by the facts as stipulated. Bott v. McCoy, 20 Ala. 578; Logan v. Hall, 19 Iowa, 491; Sawyer v. Corse, 94 Amer. Dec. 445. The alterations of the terms of a contract is equivalent to making a new contract, consisting of the new terms, and what remains unchanged of the original contract. The old agreement being incorporated into the new, the latter must be construed with reference to it. 3 Amer. & Eng. Enc. Law, 890; 9 Cyc. 579. Mistake is an erroneous mental condition, conception, or conviction, induced by ignorance, misapprehension, or misunderstanding of the truth, but without negligence, and resulting in some act or omission done or suffered erroneously by one or both of the parties to a transaction, but without its erroneous character being known or intended at that time. Pomeroy's Equity, sec. 839; Warville on Vendors, sec. 831; 9 Cyc. 394.

*Ede & Churchill,* for respondent.

Probative facts having been stipulated, the trial court is at liberty to draw all the inferences which logically and naturally flow from the facts stipulated, and all ultimate facts properly deducible from the probative facts stipulated. Towle v. Sweeney, 83 Pac. 74; Home Inv. Co. v. Clarson, 21 S. D. 72, 109 N. W. 507; Geib v. Reynolds, 28 N. W. 923. In a stipulated case, inferences from the facts may be drawn by the court in the same manner as by a jury. Hallet v. Jenks, 3 Cranch, 210. A broker is not permitted to deal with the subject matter of his agency for his own advantage, but must give the principal the benefit of any profit which he may make in the transaction. Any profits made out of the purchase or sale of property for the principal belong

to the latter, as where the agent sells for a price higher than that limited by the principal. 4 Am. & Eng. En. of L. 969; Greenfield Savings Bank v. Simons, 133 Mass. 415.

SMITH, P. J. Action to recover commissions on a land sale. A jury was waived and the case submitted to the court upon an agreed statement of facts. The entire transaction between the parties was by correspondence, and the agreed statement of facts consists wholly of the letters constituting the correspondence, with the additional stipulated statement that "plaintiff has done and performed everything on his part to be done and performed." On August 30, 1906, defendant by separate written contracts listed for sale with plaintiff, a real estate agent at Des Moines, Iowa, two quarter sections of land in South Dakota, one in Clark county, at $19 per acre, the other in Beadle county, at $18 per acre, terms of sale upon both tracts $1,200 cash, $640 in two years, balance in ten years, with interest at 6½ per cent. on deferred payments, agent not given exclusive sale, but defendant to notify plaintiff within three days if sold by defendant, the prices named to be good for four months, if not sold before. November 1, 1906, defendant wrote and mailed to plaintiff a letter notifying him that he had himself sold the quarter section in Clark county. It is conceded plaintiff never received this letter. On February 28, 1907, plaintiff wrote to defendant as follows: "Mr. J. C. Ash, Delmont, S. D.—Dear Sir: A few months ago you listed with me the N. W. 18-113-57 in Clark County, S. D., at $19.00 per acre. Can't you cut this price a little for quick action. I am going out next week and will try to swing it if you will cut the price a dollar or so per acre. I have two or three men who are inclined to that part of the country. Let me hear from you at once. Write me so I will get the letter here next Monday A. M. without fail." To which defendant replied: "Will cut that price $100.00 for all cash but $1,400 to run five years, (an old line mortgage at 7 per cent just being negotiated." March 14, 1907, plaintiff wrote defendant: "I was up to S. D. last week and had a man look at your land and I think I can close a deal with him if you will make terms so he can swing it.

He has a second mortgage for $360.00 on the S. W. 12-116-59 Clark Co. due in about a year and a half that he wishes to turn in. It draws 6 per cent., is on a man that is perfectly good and both he (the man wants your land) and I will endorse the note and either of us is good. He will pay $800.00 or $900.00 cash besides this, and would like five years on the balance with the privilege of paying $100.00 or more at any interest paying date. I have priced the land to him at $19.00 per acre, and you are to pay me $100.00 commission. Now if you will accept on these terms, please give me the authority to sell in that way and I will push it through at once. I am almost sure we can make it. Let me hear by return mail." March 18, 1907, defendant replied: "Your favor of the 14th inst. at hand and contents noted. I cannot handle the second mortgage you speak of but will take a second mortgage of $500.00 back on the land for five years at 6 per cent., and if your party is good you could draw a $100.00 note and I will sign it over to you for your commission if he cannot raise the balance. I think I told you I had just made a loan of $1400. on this land that runs five years at 7 per cent. with privilege of prepayment in even hundreds. Hoping this will enable you to close the deal." March 22d defendant wired plaintiff: "Will accept twelve hundred cash. Second mortgage for balance." On the same day, in response to the last letter and telegram, plaintiff wrote defendant: "I offer $1200 cash, purchaser to assume mortgage for $1400 and give second mortgage for the balance of the purchase price at $18.00 per acre." March 26th defendant replied by telegram: "I accept offer twenty third inst., seven per cent. on balance." On the day this telegram was received plaintiff entered into a written contract with Gaines & Atkins, purchasers, for a sale of the quarter section in Clark county at $21 per acre, and sent defendant a check for $25 to apply on the purchase price. On April 4, 1907, defendant wrote plaintiff as follows: "When making deed yesterday I noticed the numbers you gave are on the Clark county land, which I sold last October, and what I was selling is about nine miles west in Beadle county. I will hold the papers till I hear whether you made a mistake in writing the numbers or have looked at the wrong land.

If you have looked at the right piece of land, the S. W. of 23-113-59 wire at my expense and I will forward deed and note by return mail. If not, write and I will return your earnest money." On April 7th plaintiff replied as follows: "I arrived home from Clark Co. S. Dakota last evening to find your letter in which you state you sold last October the land I bought. We found that out when we were there, or the man who was working on the land said so. I am not determined at this writing what steps I shall take in this matter. The earnest money you may hold till the purchaser has an opportunity to look up this Beadle county quarter." On the 8th of April defendant returned to plaintiff the $25 earnest money paid on the purchase price of the land, which the plaintiff returned to the bank who sent it, and on May 20th defendant notified plaintiff that this money was deposited in said bank subject to his order. It is conceded that defendant did not intend to authorize a sale of the Clark county land, but believed he was selling the quarter in Beadle county. It is also conceded that "plaintiff had no knowledge that defendant believed he was selling the Beadle county land."

Plaintiff claims to recover from defendant as commission the difference between $18 per acre, the price offered in plaintiff's letter of March 23d and accepted by defendant's telgram of March 23d, and $21 pr acre, the price at which the land was sold to Gaines & Atkins. The trial court denied plaintiff's claim on the sole ground that he had fraudulently concealed that the land had been sold for $21 per acre instead of $18 named in the offer of March 23d. Appellant's counsel argue at length, both orally and in his brief, that defendant should not be permitted to repudiate the indebtedness for commissions by reason of his own mistake as to the land sold, for the reason that the mistake was not participated in by plaintiff or occasioned by plaintiff's act. The trial court did not base its conclusions and judgment upon the ground of mistake, but upon the ground of fraud in the concealment of the price at which the land was sold. It is conceded by counsel on both sides that the issues presented by the pleadings are im-

Vol. 28 S. D. 8.

material; the whole facts and evidence · being stipulated. Cable
Co. v. Rathgeber, 21 S. D. 418, 113 N. W. 88; Sweet v. Myers, 3
S. D. 324, 53 N. W. 187.

[1] Appellant contends that the stipulation "that plaintiff has
done and performed everything on his part to be done and per-
formed," should be construed as stating an ultimate conclusion of
fact, while respondent contends it states a conclusion of law only,
and is an invasion of the function of the court, and of no effect.
It may be conceded that the stipulation is inoperative if it be an
attempt to determine the law properly applicable to stipulated
facts.

[2] If this paragraph of the stipulation relates to acts to be
done or performed by plaintiff, what are those acts? The solu-
tion of this question requires an examination of the record to
ascertain the actual contract of employment. There is no con-
troversy as to the terms and conditions of the original written
contract. In its conclusions of law the trial court excluded this
contract from consideration, but we do not deem this to be ma-
terial on this appeal. All the facts are before us, and we need
only determine whether the final conclusions and judgment of the
trial court are sustained by the record. An examination of the
original contract under which defendant's lands were listed dis-
closes that the listing does not expire in four months, but that the
price named is good for four months only. That this is so is
evidenced by the fact that on February 28, 1907, after the four
months had expired, plaintiff wrote defendant, "A few months
ago you listed with me  *  *  *  at $19.00 per acre. Can't you
cut this price a little for quick action," etc., to which defendant
replied: "Will cut that price $100. for all cash but $1400. to run
five years, (an old line mortgage at 7 per cent. just being nego-
tiated." Both parties thus concede that the land is still listed with
plaintiff for sale under the original contract, without change as to
the provisions relating to commissions, terms of payment, or price.
If a sale had then been consummated upon the terms named, and
at the cut price, viz., $100 less than $19 per acre, any sum in
excess of the $19 per acre might have been retained, and plaintiff

would have been under no legal duty to disclose the selling price to defendant, because neither party had sought to change the terms of the contract as to commissions. But on March 14th plaintiff proposed to defendant entirely new terms of payment and new conditions as to commissions, but proposed no change of the original price of $19 per acre, saying: "I have priced the land to him at $19.00 per acre and you are to pay me $100.00 commission." Four days later defendant replied, suggesting certain modifications of the payments proposed, and, directly taking up the question of the commission of $100, says: "If your party is good you could draw a $100. note, and I will sign it over to you for your commission." Three days later defendant, by telegraph, modified this last offer as to terms of payment, saying: "Will accept $1200, second mortgage for balance." The next day plaintiff proposed terms of payment in exact accord with defendant's modified offer, and also a change of the price of the land from $19 to $18 per acre, leaving the proposal that he accept $100 cash or note for commissions unchanged. Three days later defendant accepted all the terms of sale and the proposed commission as thus worked out by the negotiations. Plaintiff immediately sold the land upon the exact terms thus finally agreed upon, $100 cash in hand, $1,200 cash when deed and abstract are delivered, purchaser to assume existing mortgage of $1,400 second mortgage for balance, with a deduction for car fare, except that, instead of $18 per acre, he fixed the price in the contract at $21 per acre. Under this contract the excess of $3 per acre would necessarily be included in the second mortgage for balance of purchase price. It thus becomes quite plain that plaintiff in selling to Gaines & Atkins "had done and performed everything on his part to be done and performed," and more, for he had sold defendant's land for $21 instead of $18 per acre. This was something which by his agreement with defendant was not required "on his part to be done and performed." That plaintiff proposed to accept and defendant agreed to pay $100 cash if the purchaser could raise it, or a $100 note if the purchaser could not raise cash, as commission on the sale, is perfectly plain. It is clear, therefore, that, in the absence both of fraud on the part of plaintiff and mistake

on the part of defendant as to the tract of land sold, plaintiff could not recover a sum in excess of $100 as commissions on the sale.

[3] But the fact that plaintiff sued for more than he could recover would not defeat a recovery of the amount legally due. This brings us to a consideration of the alleged concealment on the part of the plaintiff of the price at which the land was sold as affecting his right to recover $100 commissions. It cannot be doubted that defendant's refusal to proceed with the sale resulted from his mistake as to the identity of the land sold. It is conceded that plaintiff had no knowledge of this mistake until after he had sold the land to Gaines & Atkins. The contract with these buyers recites that plaintiff received from them $100 in cash to apply on the purchase price of the land. The plaintiff remitted to defendant $25, but, if it be assumed that this was part of the $100 cash received, the record does not show what disposition plaintiff made of the remaining $75. What report, if any, plaintiff made to defendant of this sale, we do not know. It was within defendant's power to disclose this, but the statement of facts is silent. Why should not the same inferences be drawn from the absence of facts from an agreed statement that might be drawn from the absence of evidence? If plaintiff failed to report fully all the facts in connection with the sale, may it not fairly be assumed to have been because of defendant's refusal to proceed with the sale, rather than a concealment evidencing a design on his part to accomplish a fraudulent purpose? If the deal had been closed according to the terms of sale, the excess of $3 per acre must have been included in the second mortgage to defendant, and would thus have come to his knowledge. Possibly the plaintiff may have intended to demand the excess of $3 per acre as his commission, as he has done in this action, but such demand would not in itself constitute fraud, when founded upon a claimed legal right, even though the court should determine that plaintiff was not legally entitled to that commission. Actual fraud is always a question of fact (Civ. Code, § 1203), and must always be an ultimate conclusion of fact deducible from probative facts stipulated

or proved (Towle v. Sweeney, 2 Cal. App. 29, 83 Pac. 74; Home Inv. Co. v. Clarson, 21 S. D. 72; 109 N. W. 507). We are of opinion that the facts as stipulated do not sustain the final conclusion of fraudulent concealment of the price at which the land was sold.

[4] The only question remaining is the mistake on the part of defendant in the land sold as affecting plaintiff's right to a commission. It is conceded that plaintiff neither participated in or by any act contributed to this mistake. The question presented is precisely the same as it would have been had defendant by mistake listed the Clark county land for sale, never having owned it, and plaintiff without any knowledge of the mistake had sold it on the terms authorized. In such case it is too plain to require discussion or citation of authorities that plaintiff could recover the stipulated commission. Arnold v. Nat. Bank of Waupaca, 126 Wis. 362, 105 N. W. 828, 3 L. R. A. (N. S.) 580. In such case the ordinary rule of mistake has no application. Anson, Contracts, p. 130; Strong v. Lane, 66 Minn. 94, 68 N. W. 765; 9 Cyc. 398, d. 2, where it is said: "The rule, however, that both parties must assent to the same thing and in the same sense, has no reference to the misconception of a party not authorized by the language used or by the terms of the agreement. If the agreement describes the subject-matter and the description does not admit of two meanings, the fact that one of the parties thought that it was something else does not affect the contract." The contract in this case as evidenced by plaintiff's letter of February 28, 1907, describes this land as "N. W. 18-113-57 in Clark County, S. D." In this description there was no possibility of mistake. There was clearly negligence on the part of defendant in failing to notice that the land was the Clark county quarter, but for that negligence plaintiff was in no way responsible, nor can his right to commission on a sale of the land be in any manner affected thereby. In Arnold v. Nat. Bank of Waupaca, supra, the court says: "It is entirely clear, as already stated, that, if an individual employs an agent to find a customer for certain lands, he becomes liable for the agreed compensation, whether he owns them or not,

although he may have acted on the mistaken supposition that he has title."

'We are of opinion the trial court was in error in holding the stipulated facts sufficient to sustain the finding "that the plaintiff thus secretly contrived to extort from the defendant the sum of $3 per acre * * * in addition to the commission of $100 agreed to be paid the plaintiff by the defendant for negotiating the sale of said land." The case is remanded to the circuit court, with direction to enter judgment for plaintiff for the sum of $100, with costs of that court, unless upon defendant's motion, for good cause shown, upon due notice to plaintiff, the trial court shall direct that the stipulation of facts relating to the question of fraud on the part of plaintiff be vacated, in which case a new trial shall be had, appellant to recover costs of this appeal.

WHITING, J., not sitting.