KATHERINE BAUER ET AL., APPELLEES, V. ALEX BAUER ET AL., APPELLEES: L. W. EHLERS, APPELLANT.

285 N. W. 565

FILED MAY 12, 1939. No. 30532.

*Butler & James* and *Lehman & Swanson,* for appellant.

*I. C. Bachelor, contra.*

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

JOHNSEN, J.

Defendant Ehlers has appealed from the refusal to grant specific performance of a farm lease, on his cross-petition.

Katherine Bauer, owner of the land, and Peter Bauer, a son, and occupant by sufferance, sued to enjoin Alex Bauer, another son, and L. W. Ehlers, from trespassing. The object was to prevent Ehlers from taking possession under a lease given him by Alex Bauer, in writing, dated

April 5, 1937, for a five-year term commencing March 1, 1938. Ehlers cross-petitioned to enforce the lease.

Record title stood in the name of Alex Bauer at the time he executed the lease to Ehlers. He had bid in the property and taken sheriff's deed, on a foreclosure sale against the mother, but had agreed to hold title for her and make conveyance at any time she reimbursed him for his advance.

Sheriff's deed was issued on February 10, 1937. Alex Bauer made leases for the 1937 crop season in his own name. Part of the property he leased to his brother Henry. He permitted his brother Peter to occupy the house and a truck gardening patch. His business sense, however, apparently suggested the inadvisability of continued filial occupancy, and, as early as March, 1937, he began to look for a desirable tenant for the following year. He testified that his mother, too, asked him not to let any of the sons rent the place again. His wife corroborates this testimony. It is denied by the mother, but her knowledge and recollection are not impressive, probably due to her age. Alex Bauer offered the farm to Ehlers, who was reputed to be a good farmer, and, after some negotiations, the lease involved was executed between them. The record indicates that Ehlers acted in good faith and without knowledge that title was being held for the mother. He first learned of this fact from Henry Bauer, when he went on the land in August, 1937, to prepare it for fall seeding.

It is a fair inference from the record that, after the lease was made with Ehlers, Peter and Henry Bauer and a sister, Lydia, who lived with the mother, joined forces to turn her against Alex, and, by their proximity and numbers, succeeded in doing so. Lydia wrote Alex: "Mother don't like your way of doing." Her letter revealed also what probably was the basic grievance: "For heaven's sake don't think we are going to give him (Pete) any money." Peter took the old lady to a lawyer and had her bring suit against Alex, to have it decreed that he held title as trustee and to require him to make conveyance. He had managed to arrange an outside loan, sufficient to tender what Alex had advanced,

and, although he had no rights in the property, he joined as a plaintiff in the petition. Decree was entered in favor of the mother, and she thereafter held legal title.

Ehlers had recorded his lease and, at the commencement of his term, prepared to move on the land. Alex Bauer undertook to assist in dispossessing Peter. This action was then brought, in the name of the mother and Peter, to enjoin Alex and Ehlers from trespassing. The trial court granted an injunction, and denied specific performance of Ehlers' lease.

Making due allowance for the fact that the trial court saw and heard the witnesses, it is our view that Ehlers' lease should be recognized and enforced.

The right to specific performance is ordinarily termed a matter of judicial discretion. *Clarke v. Koenig*, 36 Neb. 572, 54 N. W. 842; 25 R. C. L. 214, sec. 16. It is not discretionary in the sense, however, that it may be granted or denied at the will or pleasure of the judge. Pomeroy, Specific Performance of Contracts (3d ed.) sec. 35. It is governed by the elements, conditions and incidents that control the administration of all equitable remedies. Pomeroy, Equity Jurisprudence (2d ed.) sec. 2184. While no rule of absolute obligation and authority in all cases can be laid down (2 Story, Equity Jurisprudence (14th ed.) sec. 1026), it should, in general, be granted as a matter of course, of a written contract, cognizable in equity, which has been made in good faith, whose terms are certain, whose provisions are fair, and which is capable of being enforced without hardship, where the ends of justice will be subserved thereby. *Bennett v. Moon*, 110 Neb. 692, 194 N. W. 802; *Willard v. Tayloe*, 8 Wall. (U. S.) 557, 19 L. Ed. 501. If the party seeking the relief has been guilty of any conduct offensive to the conscience, the remedy may, of course, be denied, under the familiar maxims of equity.

Here, the lease contains all the elements that entitle a contract to specific performance, and there has been no conduct on the part of Ehlers which would justify a denial of the remedy. The provisions and conditions are the cus-

tomary ones in a farm lease. It is for a five-year term, but nothing appears in the record from which it can be said that this is unusual or unfair. No other lease has been executed by the mother, so no conflicting equities are involved. The termination of the sufferance tenure of Peter and Henry Bauer and their disconcertion in removing from the farm are not such hardships as warrant a withholding of the remedy. The sole remaining consideration, then, is whether the mother ought equitably to be held to the obligation created by her son.

There is evidence to support the contention that she authorized the making of a lease with Ehlers. She denies that she authorized the making of it. She denies also that she had any knowledge of it. That question, however, is not controlling. Section 76-265, Comp. St. 1929, provides that, if no declaration of the terms of a trust has been recorded and the name of the beneficiary does not appear of record, a trustee holding title to real estate will be conclusively presumed to have power and authority to dispose of the trust estate. The primary purpose of this statute, of course, was to avoid title uncertainties and to facilitate conveyances, but there is nothing in its language or salutary object that requires a narrow construction, restricting its application to conveyances of the trustee's entire estate and holding that grants of lesser estates and interests are not within its operation. We accordingly hold that its provisions are applicable to a lease made by a trustee, and that in this case Alex Bauer will be conclusively presumed to have had the necessary authority to enter into the lease with Ehlers, who had no knowledge of any lack of right or power.

There is another general principle applicable, under which it also would have to be held that, as against Katherine Bauer, Ehlers was entitled to regard Alex Bauer as the absolute owner of the property, to deal in good faith with him accordingly, and to be protected in any just contract right acquired and against any injury sustained, from acceptance of his apparent status. When one of two innocent persons must suffer a loss from the acts of a third

party, it must be borne by the one whose conduct has rendered the injury possible. *Kansas City Life Ins. Co. v. Neverve,* 133 Neb. 29, 274 N. W. 390; *First Trust Co. v. Danielson,* 132 Neb. 141, 270 N. W. 680; 10 R. C. L. 695, sec. 23. The record shows that Ehlers had prepared to move onto the farm and to make it his home. This deprivation is such a loss or injury as to permit invocation of the foregoing rule.

When Katherine Bauer claimed the title against Alex Bauer, as trustee, she took it subject to the burden of Ehlers' lease.

We should perhaps add that, while the question is not raised by the parties, we have not overlooked the fact, in considering the right to specific performance, that a lease is involved, and not a contract for a lease. There is authority to the effect that the remedy is not available as to an executed lease. *Genardini v. Kline,* 19 Ariz. 558, 173 Pac. 882; 58 C. J. 1026. On the other hand, specific performance has been granted to enforce the right to possession under a lease covenant. *Duckworth v. Michel,* 172 Wash. 234, 19 Pac. (2d) 914. We have specifically enforced a renewal covenant in a lease (*Gorder & Son v. Pankonin,* 83 Neb. 204, 119 N. W. 449), but this may technically be regarded as an agreement to give a lease. Without passing on the universality of the right to seek specific performance of the covenants of a lease, though the other equitable factors are present, it is clear that, where the lessor or his grantee repudiates and endeavors to prevent enforcement of a lease by enjoining the lessee from trespassing on the premises, the court has jurisdiction, on cross-petition, to confirm the lease, establish the tenure, and decree the lessee's right to possession, by way of specific performance, under the well-established doctrine that equity will exercise its jurisdiction to settle a controversy and afford complete relief.

The decree of the district court is reversed and the cause remanded, with directions to enter a decree in accordance with this opinion.

REVERSED.