Allen AMDAHL, Plaintiff and Appellant,

v.

Mary I. LOWE, a widow, and David W. Lowe, individually and as co-trustees, Defendants and Appellees.

No. 17204.

Supreme Court of South Dakota.

Considered on Briefs March 20, 1991.

Decided June 5, 1991.

Rehearing Denied July 8, 1991.

William E. Coester, Milbank, for plaintiff and appellant.

Max Gruenwald, Milbank, for defendants and appellees.

AMUNDSON, Justice.

Allen Amdahl (Amdahl) appeals from a trial court judgment denying specific performance on an alleged contract for the sale of real property. We affirm.

### FACTS

This dispute involves two parcels of farmland in Grant County, South Dakota. Parcel 1 is comprised of 400 acres, and Parcel 2 is comprised of 480 acres. These 880 acres comprised the farm of John and Mary Lowe, who owned the property as joint tenants with the right of survivorship. Shortly before his death, John Lowe (John) and his wife, Mary Lowe (Mary), executed a deed terminating the joint tenancy, and creating a tenancy in common, with each owning an undivided one-half interest in the farmland. This deed was signed February 13, 1981, and recorded on February 17, 1981. Following his death, a trust was created under the Final Decree of Distribution in the estate of John Lowe, naming his widow Mary and son David as co-trustees of the undivided one-half interest of John in the farmland.

After her husband's death, Mary continued to live in the family farm home, while son David carried on the farming operation and lived in a second house located on the farm. In early January, 1987, Mary told

friend Isabelle Lupinek (Lupinek) that she wanted to sell some of the farmland. Lupinek knew Amdahl was interested in buying farmland so she informed him of her conversation with Mary. Amdahl then phoned Mary to tell her he was interested in purchasing the farmland. After this initial contact, Mary informed him that she was interested in selling only the 400 acres contained in Parcel 1, and did not want to sell the 480 acres of Parcel 2 where both her home and David's home were located.

The parties disputed the remaining facts, particularly how much land was actually for sale. Amdahl contended that in later discussions Mary was willing to sell all 880 acres; Mary and David maintained that they had never wanted to sell all 880 acres, only the 400 acres of Parcel 1. David also testified that he told Amdahl that he and his mother were co-trustees of the undivided one-half interest in the farmland, however, Amdahl denied any knowledge of the existence of the trust affecting the title to the land.

There were a number of contacts between the parties regarding the possible sale of the farmland. In discussions with Mary and David, Amdahl stated he would negotiate only as long as no other bidders were involved. On the morning of January 26, 1987, Amdahl came to Mary's residence to discuss the sale. He told Mary and David they would have to either accept or reject his offer that morning before he left. After the parties negotiated for some time, Amdahl dictated and Mary wrote down the following:

January 26, 1987

I Mary Lowe in the presence of David Lowe received from Allen Amdahl $1.00 in cash binding the sale of my farm (of 880 Acres) for the amount of $210,000 with final payment due Nov. 1, 1989[.] Terms of Agreement have been mutually agreed to by both parties. Contract drawn up as soon as possible.

Amdahl then directed Mary to sign the memorandum and asked David to witness her signature by signing his own name. Amdahl then took the memorandum and, in the presence of Mary and David, wrote on the back of the sheet of paper the following:

Jan. 26          $1

May 2, 87
    20,000             8% Int. starts

Nov. 1, 87
    20,000

Nov. 1, 88
    30,000             house can be moved
                       when 50,000 principle [sic] paid

Nov. 1, 89
    140,000

Amdahl did not sign either side of the memorandum. Amdahl then gave Mary $1.00. Before leaving, Amdahl told Mary and David he would bring a contract for deed to Mary for her signature, similar to a contract for deed that he had with him on that day.

Amdahl returned three days later and delivered to Mary a proposed Contract for Deed which set forth the legal description for all 880 acres of land and restated the purchase price of $210,000. The Contract for Deed, which Amdahl had signed, also added a number of provisions that the parties had not discussed, including a refinancing clause. That clause read:

However, if the Buyer is unable to secure financing under reasonable terms and conditions as they exist on November 1, 1989, from the Federal Land Bank Association of Omaha, Buyer and Seller understand and agree that Seller will negotiate a refinancing of the sums due and payable by Buyer to Seller on No-

vember 1, 1989, which refinancing will be done under reasonable terms and conditions as of that date.

Mary did not want to sign the proposal until she had conferred with her attorney. After doing so, she refused to sign the Contract for Deed, and Amdahl then sued for specific performance based on the memorandum of the oral contract. The trial court denied specific performance, and Amdahl appealed.

## ISSUE

Did the trial court abuse its discretion in not ordering specific performance of an oral contract to sell real property?

## ANALYSIS

The remedy for a breach of an agreement to sell real property is specific performance. SDCL 21–9–9. Specific performance is an equitable remedy and this court's standard of review addresses whether there has been an abuse of discretion by the trial court after reviewing the facts and circumstances of each case. *Wiggins v. Shewmake*, 374 N.W.2d 111 (S.D.1985); *Dolan v. Hudson*, 83 S.D. 144, 156 N.W.2d 78, *aff'd on rehearing*, 83 S.D. 331, 159 N.W.2d 128 (1968).

Amdahl contends that it was an abuse of the trial court's discretion to refuse to grant specific performance because the court found that a contract was made, and because there was a writing sufficient to satisfy the statute of frauds, SDCL 53–8–2.[1] To resolve this dispute we must determine whether there was a contract for the sale of land, whether there was a writing sufficient to satisfy the statute of frauds, and whether the contract was enforceable.

Once we ascertain whether a valid, enforceable contract existed, we can then determine whether the trial court's decision to deny specific performance was within the bounds of its discretion.

The trial court made several conflicting conclusions with regard to whether there was a contract.[2] The relevant conclusions state:

B. That there was an oral contract [for] the sale of real estate between the parties hereto.

C. That the essential elements of the oral contract were not contained in the written memorandum, and, the oral contract cannot be proved by parol evidence.

D. That the memorandum is lacking a significant number of the essential elements of a binding contract for the sale of land.

E. That the memorandum language "contract drawn up as soon as possible" was an indication that the memorandum was only part of preliminary negotiations and that the actual contract would follow later.

F. That the typed Contract for Deed provided by [Amdahl] to ... Mary Lowe included substantially different legal terms than the memorandum contained.

G. That a contract for the sale of land must include, among other elements, an offer and acceptance. That Mary Lowe's offer was never accepted by [Amdahl]. That [Amdahl's] tender of the Contract for Deed was a counter offer to Mary Lowe, which was not accepted by her.

H. That because the memorandum was lacking in sufficiency of detail, and, because of the substantial variants be-

1. SDCL 53–8–2 provides, in relevant part, as follows:

The following contracts are not enforceable by action unless the contract or some memorandum thereof is in writing and subscribed by the party to be charged or his agent, as authorized in writing:

. . . . .

(3) An agreement for sale of real estate or an interest therein, or lease of the same, for a period longer than one year. However, this does not abridge the power of any court to compel specific performance of any agree-

ment for sale of real estate in case of part performance thereof[.]

2. The trial court's Findings of Fact and Conclusions of Law failed to incorporate its Memorandum Decision, which the parties have referred to throughout their briefs. However, it is firmly established that a memorandum opinion is not material and has no binding force unless specifically included by reference in the findings and conclusions. *Dale v. Board of Educ.*, 316 N.W.2d 108, 112 (S.D.1982); SDCL 15–6–52(a).

tween the memorandum and the subsequent Contract for Deed, there was no meeting of the minds of the parties hereto.

.    .    .    .    .

K. That specific performance is also denied on the issue of whether Mary Lowe individually had the power to sell the farm land held by her and David Lowe as Co–Trustees under the terms of a trust. Without a doubt, the trial court's conclusion that there was an oral contract is contradicted by the other conclusions quoted above.

The trial court concluded that the parties had made an oral contract for a sale of real property. (Conclusion of Law B.) The essential elements of a contract are set out in SDCL 53–1–2, and three of the elements, parties capable of contracting, a lawful object, and sufficient cause or consideration, are not at issue. The final element, that of consent, is a question of law and is to be judged on the objective facts of the particular case. *Federal Land Bank v. Houck*, 68 S.D. 449, 4 N.W.2d 213 (1942); *McPherson v. Fargo*, 10 S.D. 611, 74 N.W. 1057 (1898).

■ A party's intentional conduct which constitutes a manifestation of assent will bind a party even though the party's conduct does not truly express his or her state of mind. *Houck*, 68 S.D. 449, 4 N.W.2d 213. Although Mary may have desired to sell only the 400 acres contained in Parcel 1, she signed a statement that she was selling her farm of *880 acres*. Amdahl was entitled to rely on her signature to the statement that she was binding herself to sell all 880 acres. Admittedly, Mary had first discussed selling only Parcel 1. However, Amdahl told Mary he wanted to buy the entire 880 acres, and the parties negotiated back and forth over the matter. Under the circumstances, Amdahl could reasonably conclude that Mary had indeed decided to sell both Parcel 1 and 2.

■ Although both Mary and David testified that they were confused, and Mary contended that she was only acting as a scrivener at Amdahl's direction, the trial court did not find any duress, undue influence, or overreaching. Mary also argues that there was no mutual assent because there was a mistake of fact as to the amount of land to be sold. However, to warrant cancellation of a contract, "[t]he mistake must not have arisen from want of such care as would be exercised by a person of reasonable prudence where the means of knowledge were readily accessible." *Olson v. Opp*, 85 S.D. 325, 329, 182 N.W.2d 220, 222 (1970). Where, as here, the agreement describes the subject matter and the description does not admit of two meanings, the fact that one of the parties thought it was something else does not affect the contract. *Luce v. Ash*, 28 S.D. 109, 132 N.W. 708 (1911). There can be no plainer manifestation of assent than Mary's signature on the written statement memorializing the agreement she and Amdahl had reached: "I ... received from Allen Amdahl $1.00 in cash *binding the sale of my farm (of 880 Acres)....*" (Emphasis added.) If the statement had read only "my farm," it may have been susceptible of more than one meaning, however, the inclusion of the amount of the acreage to be sold can have but one meaning. The trial court properly concluded that the parties had agreed to the purchase and sale of the Lowe farmland. It was reasonable for Amdahl to rely on Mary's signed statement as objective proof of a meeting of the minds.

■ The trial court determined, however, that the memorandum was insufficient because it did not contain the essential elements of the parties' agreement. Essentially, this is a conclusion that the writing did not satisfy the statute of frauds. The statute of frauds requires that contracts for the sale of land must not only be in writing and signed by the party who is to be charged, but the writing must contain all the material terms and conditions of the oral agreement between the parties. *Boekelheide v. Snyder*, 71 S.D. 470, 26 N.W.2d 74 (1947); *Carpenter v. Murphy*, 40 S.D. 280, 167 N.W. 175 (1918); *Phelan v. Neary*, 22 S.D. 265, 117 N.W. 142 (1908). To satisfy the statute of frauds, a memorandum for the sale of land

must describe the land, the price, and the contracting parties; it need not detail the form or delivery of deed, the time and place of payment, or any other matters. 2 A. Corbin, Corbin on Contracts § 499 (1950) (*Corbin on Contracts*). *See Boekelheide*, 71 S.D. at 475, 26 N.W.2d at 77; *Phelan*, 22 S.D. at 269, 117 N.W. at 144. The statute of frauds requires only that the writing evidence the substance of the contract. *Wiggins*, 374 N.W.2d at 114; *Aamot v. Eneboe*, 352 N.W.2d 647 (S.D.1984); *Drake v. Sample*, 279 N.W.2d 685 (S.D.1979). There is no fatal ambiguity if the contract terms are sufficiently certain to make the acts required of each party clearly ascertainable. *Wiggins*, 374 N.W.2d at 115.

■ The trial court did not indicate what "essential elements of a binding contract for the sale of land" had been omitted by the memorandum. From its conclusions, however, it appears that the court was concerned that the memorandum was not adequately detailed. The memorandum describes the land as "my [Mary Lowe's] farm (of 880 Acres)." A general description of the land which is the subject of the contract is sufficient, and parol evidence may be admitted to provide the more particular description. *Habeck v. Sampson*, 88 S.D. 437, 221 N.W.2d 483 (1974); 2 *Corbin on Contracts* § 499. This is an established exception to the general rule that testimony is inadmissible for the purpose of proving the terms of a contract for the sale of an interest in land which the statute of frauds requires to be in writing. *Id.* *See Braunger v. Snow*, 405 N.W.2d 643 (S.D.1987).

Second, the memorandum described the purchase price as "the amount of $210,-000[.]" This plainly evidences the price of the contract. Finally, the memorandum identified the parties to the contract; Mary Lowe is referred to in the first person as the party owning the farm of 880 acres, and Allen Amdahl as the purchaser. The memorandum at issue here set forth the essential terms in sufficient detail to determine the obligations of each party. The face of the memorandum appears to contain the essential terms of a contract for the sale of land so that the requirements of the statute of frauds could be construed as having been satisfied.

■ The conclusion of the trial court that the memorandum was only part of preliminary negotiations is not supported by the facts. The express terms of the memorandum state that "Terms of Agreement have been mutually agreed to by both parties." These words are indicative of a completed agreement, and do not establish that there are material details upon which the parties have not yet reached agreement. 17A Am.Jur.2d *Contracts* § 32 (1991). *Cf. Wiggins*, 374 N.W.2d at 115. To the contrary, the memorandum evidences the parties' agreement on the essential terms. The court apparently relied on the language stating "Contract drawn up as soon as possible," to conclude that negotiations were ongoing. However, reading the memorandum as a whole, this sentence merely indicates that the terms of the agreement will be formalized in a written contract. *Accord Johnson v. Johnson*, 291 N.W.2d 776 (S.D.1980); *Maryland Cas. Co. v. Delzer*, 283 N.W.2d 244 (S.D.1979). It does not indicate that there are remaining details which are so significant that the parties cannot be said to have reached an agreement.

■ The Contract for Deed that Amdahl tendered to Mary was not a counter offer as the trial court concluded. The trial court first concluded, and we agree, that the parties had formed an oral contract for the sale of land. The offer had been accepted, it was supported by adequate consideration and, thus, a contract had been formed at least for Mary's undivided interest. Amdahl's tender of the Contract for Deed did, however, contain terms which were substantially different than those of the parties' agreement. The inclusion in the Contract for Deed of additional or different terms could not, however, operate as a counter offer, as the parties had agreed on the essential elements.

The Contract for Deed operated as an offer to modify the terms of the contract to which the parties had previously agreed.

The tender of a deed not in conformance with the original contract of the parties amounts to an offer to modify the terms of the original agreement. *Buresh v. Mullen,* 296 Minn. 150, 207 N.W.2d 279 (1973). The rejection of such a deed does not constitute an abandonment or rescission of the contract, and the original contract remains in force unless modified by agreement of the parties. *Id. Cf.* SDCL 53–8–7 (alteration of written contract without new consideration); *Aalseth v. Simpson,* 57 S.D. 118, 231 N.W. 289 (1930) (agreement of parties needed to modify contract). Accordingly, Mary was free to reject the proposed modification, and her rejection of the tendered Contract for Deed did not extinguish the previous agreement of the parties.

■ In his complaint Amdahl did not seek specific performance of the Contract for Deed. Amdahl's prayer for relief sought judgment requiring Mary and David "to perform under the terms and conditions set forth [on both sides of the memorandum]." Amdahl could not have compelled compliance with the Contract for Deed because the parties had not agreed to the additional terms, such as the refinancing provision.

Notwithstanding the fact that there was an oral agreement for the sale accompanied by a sufficient written memorandum, we must next determine whether that agreement was valid. As previously stated, a valid contract appears to exist for the sale of Mary's undivided interest in the land. There is no question that Mary individually owned an undivided one-half interest in the 880 acre farm as a co-tenant. Likewise, there is no dispute that the remaining undivided one-half interest in the entire 880 acres was held in trust, pursuant to the provisions of John W. Lowe's Last Will and Testament and the Final Decree of Distribution and Termination of Joint Tenancy. The trial court found that "prior to January 26, 1981, David told Amdahl that Mary and he were Co–Trustees of the farm land." Amdahl contends that he was never informed that the property was subject to a trust, and that Mary and David were Co-trustees. On disputed questions of fact,

the trial court's determination will be overturned only if clearly erroneous. *Wiggins,* 374 N.W.2d at 114. There is sufficient evidence in the record to support the trial court's finding on this issue, and we are not left with a definite and firm conviction that a mistake has been made.

■ The trial court found that Amdahl was advised that a portion of the land was subject to a trust. If facts put a purchaser on notice concerning any adverse right or equity of a third person, the purchaser's want of diligence in making an inquiry is equivalent to a lack of good faith. *Madson v. Ballou,* 63 S.D. 501, 260 N.W. 831 (1935); *Kaiser v. Klein,* 29 S.D. 464, 137 N.W. 52 (1912). " '[T]o be entitled to specific performance . . ., the buyer must, generally, have been unaware of the deficiency at the time of the bargain.' " *Kaiser,* 29 S.D. at 475, 137 N.W. at 53 (quoting 2 Pomeroy's Equitable Remedies, § 833).

The existence of the trust itself makes it clear that Mary could not, as one of two co-trustees, convey fee title to all of the land. SDCL 55–3–8 states that "[w]here there are several cotrustees all must unite in any act to bind the trust property, unless the declaration of trust otherwise provides." Setting aside the fact that there is absolutely no indication that Mary signed the memorandum or entered into the contract in her capacity as co-trustee, David did not unite in the contract. Although his signature does appear on the memorandum, Amdahl concedes that David signed only as a witness to the transaction. The facts indicate that David did not join the contract for the sale of the land, either individually or in his capacity as co-trustee, and Amdahl does not challenge this fact.

■ Amdahl is experienced in the purchase of farmland and he was advised that part of the land was the subject of a trust of which Mary and David were co-trustees. There is no indication in the settled record of whether the trust was recorded in the chain of title. If recorded, then Amdahl would have record notice that the property was the subject of a trust. *See Bauer v. Bauer,* 136 Neb. 329, 285 N.W. 565 (1939). In any event, however, the deed creating

the co-tenancy and granting Mary a one-half interest in the property was recorded, giving Amdahl constructive notice that she did not possess fee title to the farmland. *Lunstra v. Century 21 GKR–Lammers Realtors*, 442 N.W.2d 448, 450 (S.D.1989). *See Madson v. Ballou*, 63 S.D. 501, 260 N.W. 831 (1935). Because Amdahl had notice that Mary did not have fee title at the time of their agreement and did not make any inquiry or investigation of the title, he is not entitled to specific performance. *Kaiser*, 29 S.D. at 475, 137 N.W. at 53.

■ Furthermore, the trial court's denial of specific performance was proper as to Mary's individual one-half interest in the 880 acres. The only valid contract that could have existed was for the sale of Mary's own personal interest in the farmland. This is especially true because Amdahl was aware that Mary had only a limited interest in the property and there was no agreement for the sale of the trust interest. However, there is no evidence that Amdahl intended to enter into any contract other than for the sale of the fee title to all 880 acres, and we cannot create a contract for the parties which they did not intend. *Raben v. Schlottman*, 77 S.D. 184, 190–91, 88 N.W.2d 205, 208 (1958); *Kaiser*, 29 S.D. at 474, 137 N.W. at 53. Although it is a recognized principle that a purchaser of real property can acquire the limited title to the property which the grantor possessed at the time of sale, this rule cannot be invoked by a purchaser who has notice at the time of the sale that the seller, with whom purchaser is negotiating, had a limited interest in the land. *Stugelmayer v. Ulmer*, 260 N.W.2d 236, 239 (S.D.1977); *Kaiser*, 29 S.D. at 464, 137 N.W. at 52.

■ Additionally, to be entitled to partial specific performance, a party must request such relief and be willing to accept partial performance. *Stugelmayer*, 260 N.W.2d at 239. Amdahl did not request partial specific performance in his pleadings and has not demonstrated a willingness to accept anything less than fee title to one hundred percent (100%) of the 880 acres.

The trial court did not abuse its discretion in refusing to grant Amdahl the equitable remedy of specific performance. The decision of the trial court is affirmed.

MILLER, C.J., and HENDERSON, J., concur in result.

WUEST and SABERS, JJ., concur specially.

HENDERSON, Justice (concurring in result).

I agree with the appellate disposition of this case in affirming the trial court.

However, I cannot accept that the original memorandum was, as the author depicts, "an oral agreement for the sale accompanied by a *sufficient* written memorandum." (Emphasis supplied mine).

There did not exist, in my opinion, a *sufficient* written memorandum.

Nor do I agree with this statement of the author: "The trial court first concluded, and we agree, that the parties had formed an oral contract for the sale of land."

Considering the evidence and the briefs of the litigants, I believe the trial court hit the nail on the head in concluding that *the written memorandum expressed only a preliminary intent to contract.* Here is my rationale:

1. During the second meeting, where the memorandum was created, Amdahl displayed a contract for deed which he said (testified to) was to be a "guideline" for drawing a subsequent contract.

2. When Amdahl subsequently showed up at the Lowe farm, he had a contract for deed demonstrating totally different terms than previously discussed. Examples: a balloon payment clause altering the previous payment obligations contained in the memorandum; a *new* legal description and additional terms such as: date of possession, removal of a house, pre-payment clause, a provision relating to warranty deed and taxes, forfeitures, amendments, and time of payment clauses. Simply

put, the contract for deed was a whale of a difference than the memorandum.

And that is why the parties' conduct exhibits only a *preliminary intent to contract* in the memorandum. Conceptually, *if* there was an agreement (contract), and there were substantial revisions to an agreement, there is no enforceable contract because there is no unconditional acceptance or no contract at all. *Sabow v. Hall,* 323 N.W.2d 861 (S.D.1982).

Furthermore, Amdahl never signed the memorandum; he did make handwritten notations on the reverse side. Mary Lowe and David Lowe signed their names "Mary Lowe" and "David Lowe." They did not ascribe that they were "trustees." Amdahl knew, from the very first meeting with the Lowes, that the land was in trusteeship.

A party is not entitled to specific performance where the evidence establishes that there was only an expression of an intent to contract and nothing more. *Nielsen v. Hokenstead,* 81 S.D. 526, 137 N.W.2d 880, 881 (1965).

It appears to me that the parties never reached a final, integrated agreement by the written memorandum. In South Dakota, by statute, the court cannot grant specific performance if the alleged agreement does not contain terms which are sufficiently certain to make the precise act which is to be done clearly ascertainable. SDCL 21-9-2(6). On the essential terms of the contract, there was no meeting of the minds. Without a meeting of the minds, a trial court simply has nothing to fasten upon—nothing to glue together—no power to create uncertainty into certainty. Under *Rossum v. Wick,* 74 S.D. 554, 56 N.W.2d 770 (1953), such uncertainty precludes enforceability. Specific performance cannot lie under the weakly supported facts of this case. Perforce, the appeal dies of incipient collapse.

I am authorized to state that Chief Justice MILLER joins in this special writing.

WUEST, Justice (concurring specially).

It seems to me *Staab v. Skoglund,* 89 S.D. 470, 234 N.W.2d 45 (1975), is applicable to some of the issues in this case. Nonetheless, I agree with the result reached by the majority because Mary, as one of the co-trustees, could not convey fee title to all the land.

SABERS, Justice (concurring in result).

I agree that Mary could not, as one of two co-trustees, convey fee title to *all* of the land. SDCL 55-3-8. Since David did not sign as a contracting party, Amdahl is not entitled to specific performance.

In my view, this prevents the existence of an essential element of a contract under SDCL 53-1-2. The parties who signed this memorandum were not "capable of contracting," at least as to *all* of this land. Therefore, an essential element is missing and there is no enforceable contract. This being so, the contract for deed that Amdahl tendered to Mary *was* a counter offer, as the trial court concluded, and it was both subject to rejection and properly rejected by Mary.

Since the contract for deed was a counter offer which was properly rejected, and because the memorandum lacked an element essential to a contract, the trial court did not abuse its discretion in denying the equitable remedy of specific performance.