EARL H. WILKINS, GUARDIAN, APPELLEE, v. MARY E. DEAL ET AL., APPELLANTS.

FILED DECEMBER 11, 1934. No. 29031.

*Lester L. Dunn* and *Woods, Woods & Aitken,* for appellants.

*Sloans, Keenan & Corbitt, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and RAPER, District Judge.

RAPER, District Judge.

Earl H. Wilkins, as guardian of George T. Price, incompetent, brought this action to recover on two guardian's bonds executed by Mary E. Deal, former guardian of George T. Price, incompetent, and her sureties. One of the bonds was given by Detroit Fidelity & Surety Company and the other by the Southern Surety Company of New York. The Southern Surety Company defaulted; issues were joined. Trial was had to the court without a jury, and judgment rendered against all three of the defendants in the sum of $11,665.67, from which Detroit Fidelity & Surety Company alone appeals.

The defendant Mary E. Deal was duly appointed guardian of George T. Price, incompetent, by the county court of Fillmore county, on April 4, 1930, and received the sum of $11,217.54 belonging to said estate from a former guardian whom she succeeded. Mary E. Deal qualified with a bond given by the United States Fidelity & Guaranty Company. On June 4, 1931, the surety on the bond was released and a new bond given, June 4, 1931, by the Southern Surety Company, which bond is conditioned as required by section 38-110, Comp. St. 1929, and also contained a clause which recites that it was substituted for a former bond of said guardian and is to be in force and take effect from and after April 20, 1931. Some time in 1932, the county judge was informed that the Southern Surety Company had been placed in receivership, and he told Mary E. Deal that she must furnish another bond. In a very few days thereafter, a man from Woods Brothers (either Mr. Aldrich or Mr. Adams) appeared and tendered the

bond for $12,000 of the Detroit Fidelity & Surety Company, on which this suit is brought, which bond was duly approved May 17, 1932, and is conditioned as required by section 38-110, Comp. St. 1929. The guardian made no report to the county court at that time.

On March 22, 1932, the supreme court of New York county, New York, placed the Southern Surety Company in the control of the superintendent of insurance, for liquidation, and enjoined the officers and agents of the company from transacting any further business.

The county court in July, 1932, cited the guardian to appear on August 12, 1932, and show cause why she should not be removed as guardian, and to render her account and to show by what authority she invested the ward's funds in an unauthorized investment. This citation was duly served on the guardian and on August 17, 1932, she filed her report which showed that she had invested $11,000 of the ward's funds in 110 shares of the preferred stock of Woods Brothers Corporation. No notice was served on the Detroit Fidelity & Surety Company. The hearing by agreement was continued until August 17, at which time the guardian answered alleging that she had on file a sufficient surety bond executed by the Detroit Fidelity & Surety Company, and that up to the present time (August 17, 1932), the ward had not suffered any loss as a result of the investment she had made. A hearing was had on the last named date at which the guardian was present with counsel and the court took the cause under advisement until September 15, 1932, at which time the court found and decreed that the guardian had made an improper and unauthorized investment of $11,000 in 110 shares of the Woods Brothers Corporation, and that the guardian has failed to restore said funds for the benefit of the ward, and that the guardian also has on hand the sum of $145.55 in cash or its equivalent, and she was discharged as guardian and Earl H. Wilkins appointed in her stead, and the court decreed there was due from

Mary E. Deal as guardian $11,145.55, which she was directed to pay over to her successor.

Woods Brothers Corporation was the agent and furnished the bonds for all three of the companies who became sureties for the guardian. Before the time the Southern Surety Company gave its bond, Mrs. Deal had purchased the 110 shares of Woods Brothers Corporation stock and, when the United States Fidelity & Guaranty Company was discharged, she signed them back to the Woods Brothers Corporation and brought to the court a draft for the $11,000 in lieu of the stock, and the next day, June 5, 1931, she reinvested the $11,000 in the same or like bonds. She then placed the bonds in a safety deposit box in the First Trust Company where they have since remained. Mrs. Deal testified that, while she has the keys to the safety deposit box, a Mr. Adams, who is an officer or employee in the surety department of the Woods Brothers Corporation, has joint control with her of the bonds as agent of the bonding company. She did not tender the stock nor the $145.55.

No appeal was taken from the order of the county court of date September 15, 1932.

Claim has been filed against the Southern Surety Company's receiver or proper officer in New York for the amount of the judgment herein.

Appellant Detroit Fidelity & Surety Company in its answer alleges and claims in its brief that its bond was given as a new bond and in substitution for the Southern Surety Company bond, which company had been dissolved by the New York court and was in effect legally dead, and that Mrs. Deal, the guardian, was in possession and custody of the Woods Brothers Corporation stock when the appellant's bond was given and therefore it is not liable for the investment in said bonds.

The appellant maintains that its bond is a substitute and not an additional bond, and is not retroactive, and it is not liable for a devastavit that occurred before its bond was approved.

The general rule is that where a bond is given during the incumbency of a guardian or administrator, whose term is not fixed, and there is no accounting made and no order of discharge of a former bond, it is an additional and not a substitute bond, and in such case the new sureties become liable for any misappropriation, defalcation or unauthorized investment of the ward's funds which occurred prior to the giving of the new bond. *Bromen v. O'Connell,* 185 Minn. 409, 82 A. L. R. 583; *Brooke v. American Savings Bank,* 207 Ia. 668; *Southern Surety Co. v. Tessum,* 178 Minn. 495, 66 A. L. R. 1136; *Abshire v. Rowe,* 112 Ky. 545, 99 Am. St. Rep. 302; *Newcomb v. Ingram,* 211 Wis. 88; *Maloney v. McCormick,* 181 Wis. 107; *Dugger v. Wright,* 51 Ark. 232, 14 Am. St. Rep. 48; *Southern Surety Co. v. State,* 74 Ind. App. 31.

In 82 A. L. R. 585, is an exhaustive note citing many cases to support the above stated rule. The compiler in that note states that in a great majority of cases the new bondsmen are held liable for a devastavit committed by the principal prior to the giving of the new bond. In some cases sureties are liable because the court construed such to be the intent of the bond; others, because of the express provisions of the statutes; others, because of both the terms of the bond and the statutes; because of the principal's obligation to make true account; and others, because of the principal's obligation to pay over as ordered upon his final accounting; others, because of the obligation upon the bond to account for all the estate.

In this state a guardian has no authority to sell personal property or invest the funds of the ward's estate without proper order of the county court. Comp. St. 1929, sec. 38-506; *Hendrix v. Richards,* 57 Neb. 794; *In re Estate of O'Brien,* 80 Neb. 125.

The duty devolves upon a subsequent surety to ascertain to his own satisfaction with reference to the condition of the estate before binding himself as surety on the bond. *Brooke v. American Savings Bank,* 207 Ia. 668; *Langdon v. Langdon,* 104 Neb. 619.

In support of its contention, appellant cites 28 C. J. 1289, where it is said: "In most states if the bond does not expressly provide that it shall operate retrospectively, the sureties are not liable for property received and converted or wasted by the guardian before the bond was given."

In *Bromen v. O'Connell*, 185 Minn. 409, the same proposition was presented and the citation from 28 C. J. 1289 considered. The court said: "We have given the cases cited in support of that dictum consideration. Some go to the extent stated, and some do not. Some are in point because of dicto rather than decision. To review them here would not be helpful. Of course, in the absence of apt language requiring it, fiduciary bonds are not given retrospective operation." That court's conclusion is sufficient in this present case on that point. Appellant concedes that a guardian's bond does cover property in the guardian's hands at the time it was given, although the guardian received the property before the execution of the bond, and therefore the bondsman is responsible only for the preservation of the property which the guardian had at the time the bond was filed, and that appellant is not liable for the unauthorized investment of the guardianship funds which occurred prior to the time its bond was given, and as the guardian still held the Woods Brothers Corporation stock, there was no breach of its bond in that regard.

The bond contains four conditions: First, to make and return a true inventory of all the estate of the ward; second, to dispose of and manage such estate according to law and for the best interests of the ward, and faithfully discharge her trust as such guardian; third, to render an account under oath of the property in her hands, and of the management and disposition of such property within one year after this appointment, and at such times as the court directs; and fourth, at the expiration of her trust she shall settle her accounts with the court, or with the ward or his legal represen-

tative, and shall pay over and deliver all the estate and effects remaining in her hands or due from her on such settlement to the person lawfully entitled thereto. It will thus be seen that it was the guardian's duty to manage the estate according to law and for the best interests of the ward, and to pay over and deliver to her successor all the estate and effects remaining in her hands. It cannot be gainsaid that the guardian did not manage the estate according to law. She invested a large sum in stocks without the approval of the court, and at the expiration of her trust she did not pay over to the plaintiff guardian the estate due from her on the final settlement. True it is, that she had purchased the stock before appellant's bond was given, but, under the authorities above cited, the appellant was nevertheless bound for her unauthorized investment, and even if there was no breach of the conditions on the first, second and third conditions, the fourth clearly was not complied with.

It could not be finally determined that the guardian was in default until there was a settlement of her account at the expiration of her trust, and no action could be maintained on the bond until such judicial settlement was had by the county court, and that court directed the guardian to pay over to the newly appointed guardian such property or funds as the court found due from her, and that decree of the county court became conclusive upon the guardian and the sureties on both the Southern Surety Company and appellant's bonds. *Langdon v. Langdon,* 104 Neb. 619; *Hughes v. Langdon,* 111 Neb. 508.

There is another feature that merits consideration. Woods Brothers Corporation was agent for every one of the three bonds given by Mrs. Deal, and when appellant's bond was furnished, its agent, Woods Brothers Corporation, knew or must have known that the investment in its stock was unauthorized and that the guardian would be required to account for the funds so invested, and Woods Brothers Corporation had joint control of

the stock through one of its employees, with the guardian, for the bonding company. With such knowledge of the condition of the guardian's acts, the appellant cannot claim exemption from a clear breach of its bond. Notice to an agent is notice to the principal, when such notice is received by the agent while acting in the scope of his authority. *Arendt v. North American Life Ins. Co.*, 107 Neb. 716.

The judgment of the district court is

AFFIRMED.