FERNE OLSEN, APPELLEE, V. ALFRED E. MARSH: MARYLAND CASUALTY COMPANY, APPELLANT.

8 N. W. (2d) 169

FILED FEBRUARY 5, 1943. No. 31486.

*Herbert E. Story* and *John H. Roper*, for appellant.

*John H. Kuns, Kuns & Van Steenberg, Robert Van Pelt, Roland V. Rodman* and *R. P. Kepler, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

PAINE, J.

This is a law action by a ward against her guardian and the surety on his bond. The action was brought in the district court for Cheyenne county, while the bond was executed for the guardian in the county court for Washington county. A jury was waived. Judgment was entered for plaintiff in the sum of $3,856.65. The motions for new trial filed by the guardian and the surety were both overruled, at which time plaintiff's attorney was granted a fee of $200 as additional costs. An appeal to this court was perfected by the Maryland Casualty Company only.

The assignments of error relied upon by the surety for reversal allege generally that the judgment is not supported by the law or the evidence, and that the amount is excessive.

It is further charged that the district court for Cheyenne county did not have jurisdiction of the subject-matter, and committed error in its rulings in receiving and rejecting

evidence, and that the court erred in holding the plaintiff's cause of action was based upon a final order; the court erred in failing to consider the findings and orders of the county court for Washington county; the court erred in making a determination of fact contrary to the finding of the county court for Washington county; the court erred in holding the proceedings in the Cheyenne county court null and void; and the court erred in overruling defendant's motion for judgment at the close of the evidence.

The bill of exceptions in this case is somewhat unusual, in that it consists, first, of some 97 pages of exhibits, and then, in conclusion, the evidence of one witness, an attorney for appellee.

Exhibits Nos. 1 and 2 are transcripts of the proceedings in the plaintiff's guardianship case in the county court for Washington county, and the same make up 53 pages, and were offered as exhibits by the stipulation of the parties and received by the court.

The same procedure was followed in the introduction of deeds, mortgages, and a receipt signed by the ward. Thereupon, all of the original files of the county court for Cheyenne county in the matter of the guardianship of the same ward in that county were offered by stipulation of the parties and received by the court.

Exhibit No. 9 was the offer of 23 questions and answers from a deposition of Alfred E. Marsh, guardian. It was stipulated that notice to take this deposition was served upon attorney R. P. Kepler, but no notice was served upon the surety, Maryland Casualty Company, and the objection that such evidence was not binding upon that defendant was sustained by the court, but the evidence was received as against the guardian.

Before discussing the law, a summary of the facts will be necessary. The two wards were Ferne Marsh, the plaintiff, born November 25, 1914, who married Gundhardt Olsen December 1, 1934, and her brother, Harvey Marsh, born June 10, 1911. On July 21, 1928, the county judge of Washington county appointed their father, Alfred E. Marsh,

defendant herein, their guardian, and on the same day he filed his oath and bond of $500, with Grant Lothrop as surety. The guardian received $2,000 for each child, and therefore on February 1, 1929, the defendant Maryland Casualty Company executed an additional guardian's bond in the sum of $4,000 in such joint guardianship matter.

Thereafter the two wards inherited $3,533.80 from the McCoy estate, and on April 15, 1930, the guardian furnished an additional new bond in the sum of $5,000 of the National Surety Company, as he then had about $7,500, in which the two wards shared equally.

Harvey Marsh became 21 years of age on June 10, 1932, and his guardian filed a final report on July 6, 1932, and paid Harvey Marsh $3,681.42, and was thereupon released and discharged as guardian for Harvey Marsh. This report shows that he paid to the Maryland Casualty Company premiums of $20 a year upon the bond for four years in the sum of $80 from 1929 to 1932 inclusive.

An order was entered by the county judge July 6, 1932, that the guardian could file a new bond in the sum of $4,000 to cover his liability as guardian for Ferne Marsh. A further order was entered on August 18, 1932, that the National Surety Company bond be reduced to $4,000, and that the bond of the Maryland Casualty Company "be discharged from further liability herein."

On July 23, 1933, the county court for Washington county accepted the final report of the guardian, and also his resignation, the guardian having reported that the ward, as well as the guardian, had removed from Washington county to Cheyenne county, of which county they had both been residents for some four years, and that it would be more convenient to have the guardianship jurisdiction removed to the county court for Cheyenne county, and there was attached to said final report a copy of a petition by the plaintiff to the county court for Cheyenne county, although at that time no such petition was pending in the county court for Cheyenne county. April 1, 1935, was the last date for filing claims against the National Surety Company, which had gone into receivership.

On December 3, 1936, the county court for Washington county entered a judgment *nunc pro tunc*, in which the order entered on July 23, 1933, was modified and changed in its final paragraph to read: "It is therefore ordered, adjudged and decreed by the court that said resignation of Alfred E. Marsh as such guardian in Washington county, Nebraska, be and the same hereby is approved and accepted, and that * * * said Alfred E. Marsh, upon the filing of a receipt from a duly appointed guardian of Ferne W. Marsh for the funds now in the hands of Alfred E. Marsh, the said Alfred E. Marsh be discharged from his trust as such guardian in Washington county, and his bondsmen released from any and all liability herein."

The action in the instant case was begun when the ward, Ferne Olsen, on December 18, 1936, filed a petition in the district court for Cheyenne county against her father and guardian, Alfred E. Marsh, and the Maryland Casualty Company, a corporation, in which she recited all of the pertinent facts about the guardianship proceeding in Washington county, including the filing of a surety bond by the defendant Maryland Casualty Company.

Service was had upon defendant Marsh in Cheyenne county, and upon the Maryland Casualty Company by service upon the director of the department of insurance of the state of Nebraska at Lincoln, Nebraska. On January 15, 1937, the Maryland Casualty Company filed a special appearance, objecting to the jurisdiction of the district court for Cheyenne county, alleging that such district court had no jurisdiction over the administration of guardianships in Washington county, and had no jurisdiction over the subject-matter for the reason that the guardian had been discharged and the surety released, and for the further reason that there had been no finding or judgment against the guardian or his surety in the county court for Washington county.

Thereafter the Maryland Casualty Company filed a demurrer, setting out, among other grounds, that the action is a collateral attack on a judgment of the county court in Washington county, which demurrer was overruled.

The surety company then filed an answer, in which it admits that it is a foreign corporation, authorized to do business in Nebraska, and that an order was entered August 18, 1932, discharging the defendant surety company from all liability for future acts of the guardian; that in accordance with an order of the county court for Washington county the guardian filed in that court certified copies of the petition and of the letters of guardianship issued to him in Cheyenne county, and a certified copy of the inventory of the personal property of said minor then on hand, in the amount of $3,525.77.

To this answer Ferne Olsen filed a reply, in which she alleged that on May 14, 1930, the guardian deposited $3,788.75 in the Liberty State Bank of Sidney, Nebraska, and three certificates of deposit were issued therefor in the name of A. E. Marsh, guardian; that thereafter, at some time between the 14th day of May, 1931, and the 14th day of December, 1931, the guardian converted the proceeds of two of such certificates of deposit to his own use; that the Liberty State Bank of Sidney failed December 14, 1931, and the guardian filed his claim for the sum of $1,838.13; that the guardian knew that the said bank was in failing circumstances when he renewed the said certificates for one year in said bank, which constituted an investment of said funds which was wholly unauthorized by the county court for Washington county.

The reply further alleged that, by reason of such negligent act, the said funds held for the benefit of the ward were lost; that the guardian, having converted the sum of $2,180 to his own use, in an attempt to furnish security executed a mortgage to himself as guardian in the sum of $2,180, to draw 6 per cent. interest, and that such conversion of such funds of the ward constituted a fraud and a violation of the terms and conditions of the bond executed by the Maryland Casualty Company, and that said guardian was never authorized by the county court for Washington county to loan to himself any sums of money whatever, but that such acts of the guardian were a part of his fraudulent scheme to convert and steal the moneys of the plaintiff.

On February 20, 1941, the Maryland Casualty Company filed an amended answer, repeating many of the allegations of its original answer, and charging that the plaintiff is estopped to maintain the action for the reason that she failed and neglected and refused to pursue her legal right against the National Surety Company or its successor.

In the bill of exceptions we find the resignation of the guardian, and attached thereto a final report, under date of June 21, 1933, of his acts and doings up to the date of such report, and this final report shows his total receipts and total expenditures and a balance due to Ferne Marsh, plaintiff, of $3,525.77, and his oath that this report is just and true, and on this final report, setting out the balance on hand belonging to Ferne Marsh, the county judge for Washington county entered a discharge of the guardian and release of the bondsman on July 23, 1933, reciting that the final report of said guardian and his acts and doings are accepted and approved, and later, on November 28, 1936, a *nunc pro tunc* order was issued, reading that the guardian, upon the filing of a receipt from a duly appointed guardian of Ferne W. Marsh for the funds now in his hands, shall be discharged from his trust and the bondsman released.

These matters, as claimed by the surety, were all within the original jurisdiction of the county court for Washington county. Const. art V, sec. 16; Comp. St. 1929, secs. 38-102, 27-503.

The county court for Washington county had original and exclusive jurisdiction over the accounts of the guardian and the settlement thereof. This court finds that this action, based upon such final order exactly as rendered, with no change thereof in any way, was the proper procedure. *Langdon v. Langdon,* 104 Neb. 619, 178 N. W. 178; 10 Neb. Law Bulletin, 407, sec. 81.

This record shows that the guardian did file his final report, he did show the correct amount of money which he should have had on hand, which report, including the amount on hand, was approved by the county court, and on this final report he was discharged, being a final order and

closing the case in the county court for Washington county. The only thing remaining for the guardian to do was to file a receipt showing that he had paid over the sum of $3,525.77.

It appears from the evidence that this report of the guardian, showing that he had on hand said sum of money in cash belonging to his ward, was false and fraudulent, for at that time he had invested a portion of said money in a bank which had failed, and the remaining portion of said money in a piece of property, the title to which had been taken in his own name, all in violation of law.

"Where a guardian ostensibly invested money by a loan to herself, giving notes and mortgages, the loan was not an investment of the trust fund, and the guardian was liable for the full amount." *Hutson v. Jenson,* 85 N. W. 689 (110 Wis. 26).

"In the case of bonds given by administrators, executors and guardians, while there is to some extent the same lack of uniformity in the decisions as in other cases, we find a more pronounced tendency to hold that the judgment or order settling the accounts or fixing the liability of the principal is conclusive on his sureties as to every matter adjudicated by it." 1 Freeman, Judgments (5th ed.) 1017, sec. 462.

The bond of $4,000 given by the defendant surety in this case was in force from February 1, 1929, for the four years during which premiums of $20 a year were paid on it.

These wrongful investments of the guardian, causing the devastavit to this ward's estate, were made during those years. The order of the county court specifically released and discharged the defendant surety "from any and all future liability therein." It cannot be held that it discharged the surety from prior wrongful acts.

"The liability of a surety on a guardian's bond, so far as the ward is concerned, is identical with that of his principal; and after proof of the receipt by the guardian of the ward's money and failure to account for it, the guardian has not faithfully discharged the duty imposed by his

obligation until he has clearly shown how it has been disposed of. Neither can the surety in the bond be permitted to say, 'You cannot prove the date when my principal converted your money, and therefore you cannot recover on any of the bonds.' " *Boyd v. Withers*, 103 Ky. 698, 46 S. W. 13.

"Ordinarily, the only questions open to the sureties in a suit on such a bond, after judgment against their principal, are in reference to the making of the bond, its legal sufficiency, and the extent of its obligation. The amount due from an administrator or executor, when it has been determined in appropriate proceedings, cannot be relitigated by his sureties." 1 Freeman, Judgments (5th ed.) 1017, sec. 462.

"It has been held in a long line of decisions of this court that sureties on a guardian's bond, in the absence of fraud, are concluded by the decree of the county court, duly entered on a hearing on an accounting or final settlement, as to the amount of the principal liability, although the sureties are not parties to the accounting. *Southern Surety Co. v. Burney*, 34 Okla. 552, 126 Pac. 748 (43 L. R. A. n. s. 308)." *Southern Surety Co. v. Williams*, 105 Okla. 44, 231 Pac. 293.

The surety in the instant case gave a bond for $4,000. The guardian was to render an account within one year, and finally to pay the amount due to his ward. The guardian failed to file these required annual reports, which the surety, in protecting its own interests, should have demanded the guardian be ordered to file.

The defendant surety insists that, as the bond of $4,000 was given for the property of two wards, and as a full settlement with the other ward was made by the guardian, no recovery can be had in the instant case in any event exceeding $2,000, or one-half the amount of the bond. In support thereof, we are cited to 28 C. J. 1297, reading as follows: "Where a single bond has been given for two or more wards, the amount of the recovery in the aggregate, exclusive of interest, cannot exceed the penalty in the bond; and each

ward is entitled only to recovery equal to his proportional interest in the bond."

True, if the estate of several wards is protected by a single bond, no one ward should be allowed to recover in full to the loss of the others, but only to the fair share thereof. However, there is but a single ward remaining in the case at bar, and in such situation the general condition of the bond is to guarantee that each guardian will account for the funds in his hands. In other words, the surety on a guardian's bond is bound by whatever binds the guardian up to the limit of the bond it has furnished. See 25 Am. Jur. 114, sec. 188.

The appellant also insists that the plaintiff cannot recover interest until after a demand was made upon the surety, where the surety was not a party to the action.

Appellant cites us to the opinion on rehearing in the case of *Kilby v. Burnham*, 65 N. Dak. 169, 176, 256 N. W. 522, 525, in which the court said: "The liability of defendant is founded upon the fact that he made the investment of the funds of the estate, and without authority; and the conclusion, therefore, is that he should not have made the investment. In determining the extent of the damages sustained by the estate, it is necessary to ascertain what would have been the status of the estate if he had not made the investment. If the investment had not been made, the funds would not have earned any interest, in which circumstance the defendant would not be required to account for an item of that character. It logically follows, therefore, that defendant cannot be liable for interest unless founded upon some other basis or reason, and we do not find any other basis or reason in the record."

Appellant contends that the court erred in allowing interest, and cites *Ericsson v. Streitz*, 132 Neb. 692, 273 N. W. 17, in which this court held that, when funds were in possession of the county judge, interest would only be allowed from a demand made or commencement of suit. However, that holding was made under a special statute (Comp. St. 1929, sec. 27-546). In the instant case, the lower court al-

lowed interest from December 1, 1934, the date the ward became of age by reason of her marriage, and from which date she was entitled to these funds. She has taken no cross-appeal. That she was entitled to interest as the court has allowed is without question, but whether or not she would have been entitled to interest prior thereto is not before this court, for the reason that the ward took no cross-appeal. "In a suit on an official bond, the surety is liable for interest from the date of the breach on the amount then recoverable." *City of Scottsbluff v. Southern Surety Co.*, 124 Neb. 260, 246 N. W. 346.

In conclusion, this case is founded upon the fact that the guardian made investments of a kind that he was not permitted by law to make. The bond of defendant surety was in full force and effect, with premiums fully paid during the time the devastavit occurred. The guardian was liable under the law, and therefore the bonding company was also liable. The county court for Washington county had jurisdiction until the guardian complied with that court's final order to file a receipt for the amount that court found to be due by the approval of his final account.

A full discussion of an abortive attempt to open a guardianship in another county before closing the first one is found in the case of *Dorr v. Davis*, 76 Me. 301, holding: "Such minor cannot acquire a residence in another county from that in which the guardian was appointed that will oust the judge of probate, who appointed such guardian, of jurisdiction over the minor and his estate, and the appointment of a new guardian by the judge of probate in another county, while the first guardianship continues, is void."

In the instant case, the district court for Cheyenne county could not go back of the amount found to be due by the county court in Washington county, but accepted that amount, and credited payments made thereon by the guardian; in other words, found the facts to be that the guardian did not have on hand the amount he had shown in his final report to the county court for Washington county. See *Chaplin v. National Surety Corporation*, 134 Me. 496, 185 Atl. 516.

We have examined all the assignments of error, but find no prejudicial error in the record. The judgment of the trial court is hereby affirmed, with an additional allowance of $200 to plaintiff's attorney for services in this court, to be taxed as part of the costs.

AFFIRMED.

ROSE and EBERLY, JJ., not participating.