IN RE GUARDIANSHIP OF JEAN PAULINE PHILLIPS.
JEAN PAULINE BEATY (NEE PHILLIPS), APPELLEE, V. HARRY
I. HYLTON, GUARDIAN, APPELLANT.

13 N. W. 2d 99

FILED FEBRUARY 4, 1944.   No. 31661.

*Benton Perry*, for appellant.

*Kirkpatrick & Dougherty, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

This is an appeal by a guardian from a judgment against him in an action involving his final accounting in guardianship. This action involves the question of guardian's liability for depreciation in value and loss on a real estate mortgage of $10,000 made by a former guardian and turned over on his resignation to his successor, the one now appealing.

Jean Pauline Phillips, the ward, was born August 16, 1918, and upon the death of her father and mother her uncle, Joseph S. Phillips, was first appointed her guardian by the Essex county orphans' court for the state of New Jersey. As he lived in Seward county, Nebraska, he thereafter was appointed guardian by the county court for Seward county, and brought the ward out to Seward county, with her estate of the value of slightly over $10,000.

The ward reached majority by her marriage on June 3, 1938, which automatically closed the guardianship and discharged the guardian (*Goble v. Simeral,* 67 Neb. 276, 93 N. W. 235), and prior to the expiration of four years from that date objections to the guardian's final report were filed in the county court, and on June 9, 1942, more detailed amended objections were filed in said court, followed by other pleadings. A trial was had, and the county judge found that the ward should keep the real estate, with the right to an accounting for the last year's rents.

From this decision the ward appealed to the district court, and it was stipulated that no new pleadings should be filed, and that the case should be tried in the district-court upon the files, proceedings, pleadings and issues as originally tried in the county court.

The transcript sets out some 55 pages of pleadings and record, and to understand the issues in the case it will be necessary to set out a very brief summary thereof.

The first guardian, Joseph S. Phillips, on May 12, 1932,

filed a petition in the county court for York county, setting out that he has been acting under letters of guardianship issued by the county court for Seward county, and has had the care and custody of the minor and her property, but that owing to ill health he has resigned as guardian, and asks to be relieved of the duties, and that said minor is now a legal resident of York county, and has personal property in York county of the value of approximately $12,000; that as he has always handled the affairs of said guardianship with the help and under the advice of Harry I. Hylton, of the First National Bank of Gresham, in York county, he therefore asks that said Hylton be appointed guardian of the personal property of the minor, and thereupon said Harry I. Hylton was appointed guardian of the person and estate of the minor on May 12, 1932, and gave bond in the sum of $12,000, on the same day.

On August 14, 1933, said guardian, Harry I. Hylton, filed an inventory, showing that the property of the ward consisted of $964.82 on deposit in the Gresham State Bank and a $10,000 note given by Wilhelm Peterson and wife, secured by a first mortgage on 120 acres of land in Seward county, and also on 8.44 acres of land in Sonoma county, California.

On June 9, 1942, the ward filed amended objections to the guardian's final report, as well as to his earlier reports. The ward admitted that the guardian is entitled to credit for the sums expended by him for her support, maintenance and education, but objected to every other item of credit claimed by the guardian in his reports.

Said ward alleges that on November 20, 1928, Joseph S. Phillips invested $10,000 of her money in certain notes secured by a real estate mortgage in the sum of $10,000 upon 120 acres of farm land, and that said mortgage was excessive and an "overloan;" that said investment was made without notice to the ward, and without any order of the county court for Seward county, and was wholly unauthorized, negligent, imprudent and unlawful. She further states that Harry I. Hylton, the present guardian, accepted said real estate mortgage as a part of the ward's estate instead

of requiring an appropriate and lawful accounting by his predecessor guardian, and that his acts and omissions in the premises were unlawful and negligent, and he thereby became liable for the negligent and unlawful acts and investments of his predecessor, Joseph S. Phillips, and is liable to account in his stead.

It is further alleged that the guardian Harry I. Hylton surrendered the mortgage and the notes secured thereby, and received from the mortgagors conveyance of the mortgaged premises, all without notice to the ward, and without any order of court providing for such notice, and said transaction was illegal and void; that afterwards the guardian, without notice to the ward, mortgaged the lands so received by him, without authority of court.

The ward further alleges that she became 21 years of age on August 16, 1939, and shortly thereafter requested Harry I. Hylton to make final report and accounting of his trust, which he failed and neglected to do, and remains in possession and control of the ward's estate, and continues to manage the same and exercise authority over it. She further claims that said guardian has permitted the lands in California to be sold for taxes.

The ward further alleges that, by reason of the guardian's unlawful and negligent acts, her estate has been depleted, and has been so entirely changed in character, kind, value and location of the property into which the guardian has reduced and converted it that the ward no longer wishes to have or receive it in settlement of her guardian's account; wherefore she prays that said guardian be required to account to her for her said sum of $10,562.52 in money, with interest thereon, that he may have credit only for the items of expenditure set forth in exhibit "A" attached, and that all the other credits claimed by him in his final report may be disallowed.

Harry I. Hylton, guardian, filed answer thereto, admitting that he expended for the interest and care of the ward, and for the preservation of her estate, the amounts set forth; admits the investment by Joseph S. Phillips of $10,-

000 in notes secured by a real estate mortgage on 120 acres of land in Seward county; admits the resignation of Joseph S. Phillips as guardian and the allowance of his final account, and his discharge, but denies every other allegation in the objections.

The guardian further states that at the time of his appointment he deemed it for the best interest of the ward to place her in the home of her uncle, H. C. Phillips, at Mitchell, Nebraska, and that she made her home with said uncle until November 11, 1935, when he notified the guardian that he was no longer able to care for her, and the guardian went to Mitchell and returned his ward to York county, taking her into his own home, and she made her home with her guardian until August 1, 1937; that during this time she completed the regular high school course at Gresham and took a year of graduate work in the York high school, and that the guardian and his wife gave the ward all the care and careful attention of parents; that on August 1, 1937, at the request of said ward and with the approval and upon the order of the county court, she took a course of instruction at a beauty school in Lincoln, and on June 3, 1938, was married to George Beaty of York, and took up residence with her husband in Scotts Bluff county.

The guardian further states that he has given the affairs of his ward his most careful attention, and endeavored to handle same in the most prudent manner; that all sums expended were for the best interests of the estate and person of said ward, and were made with the approval and upon the order of the county court for York county; that the guardian has filed several reports, and vouchers for all expenditures shown on said reports, and that these reports constitute an accurate account of all his receipts and disbursements, and he is entitled to have all his accounts approved.

It is further alleged by the guardian that, prior to the time of his appointment, farm incomes in York, Seward and neighboring counties in Nebraska had been large, crops were abundant, and prices relatively high, but that in the

fall of 1932 farm prices suddenly dropped to an abnormally low level; that drouth conditions persisted, and prices remained low through 1941, and as a result farmers became insolvent, and real estate and farm values depreciated to a very low level. The guardian states that he did not make the original loan of $10,000, but the mortgage was turned over to him merely as a part of the assets of the estate of said ward, and he is not responsible in any manner for said loan and said investment of funds; that owing solely to the drouth conditions, which were beyond his control, the note and mortgage became in arrears and the taxes delinquent, but guardian believed that farming conditions would improve, and that with one or two good crops all arrears would be made good.

However, the drouth continued until mortgagor was unable to pay arrears, delinquencies and taxes, or the principal of said loans, and foreclosure was the only remedy. Thereupon, the owner of the land offered to deed same to the ward and thus save the expense of foreclosure, so the guardian caused the real estate to be deeded to Jean Pauline Phillips, his ward, and the notes and mortgage were canceled and released, and the former owner of the real estate was given the option of redeeming and repurchasing same for a period of two years, by the payment of all arrears, but conditions became worse, and the former owner was unable to redeem, and the option to purchase lapsed. The guardian has diligently collected and accounted for all incomes and rentals from said real estate since same was deeded to his ward, has kept the real estate rented to a good tenant, and kept it in as good a condition of cultivation as possible.

When the land was deeded to his ward she was living in his home, and the matter was fully discussed with her, she examined the real estate, and stated she was glad to take it over, and never stated to her guardian any disapproval, or made any objection to his action in the matter.

Thereafter, in a proceeding had in the district court, the guardian was empowered to execute a loan and mortgage on the real estate deeded to his ward in the sum of $2,700, and

the proceeds of said loan were expended by the guardian for his ward for her care, welfare, education and maintenance, and in the preservation of her property, and said expenditures were accounted for in full; that the title to the real estate is in the name of Jean Pauline Beaty, nee Phillips; that the farm is well tilled, and with good crops will now increase in value.

The guardian further alleges that at the time of the marriage of said ward she and her husband visited at his home, and he advised her that she was of legal age and he desired to have an accounting and terminate the guardianship; that both the ward and her husband urged the guardian to continue to look after the farm until a satisfactory sale could be had; that prior to her marriage the guardian had expended more than the income from the real estate, and had advanced considerable funds for her maintenance and education, and wanted to have a final settlement.

He alleges that on October 4, 1938, he sent the ward a copy of all reports made and filed by him, excepting the first one, and offered to procure and send her a copy of that, and thereafter he did prepare his final account and papers necessary for the signature of the ward, in order to effect a complete accounting and settlement of said estate and discharge of guardianship, and shortly thereafter he went to her home in Scotts Bluff county and left all of said papers with her, and filed final account on February 14, 1939.

The guardian alleges and claims that the ward is now barred by laches and delay from questioning the final account of the guardian, and is estopped from objecting to said final accounting or any action taken by the guardian in the premises.

The guardian alleges that he paid some taxes assessed against the California real estate belonging to the ward, but made a thorough investigation and determined that the real estate had no value; that the ward procured the services of another attorney, and made a separate investigation of her own at that time, and consulted with the guardian about the advisability of redemption, and he advised against re-

demption, but told the ward and her husband that, while he had advanced considerable sums for her, if they wanted the taxes paid on the California property he would advance enough for that purpose; that after careful consideration they elected not to redeem said real estate. Therefore, the ward is estopped from asserting any claim against the guardian in regard to said California real estate, as the failure to redeem and pay the taxes was her sole responsibility, exercised by her more than two years after she became of legal age, and the guardian has no responsibility of any kind in the premises.

The guardian prays the court to determine that the ward, Jean Pauline Beaty, nee Phillips, has no cause of action of any kind against the guardian; that all her purported objections be held without merit and dismissed; that the court find in favor of guardian and against said ward on all her purported causes of action; that the court approve all the reports filed by guardian, and confirm all his actions in the premises; that the court find that all property coming into the guardian's hands for said ward has been properly accounted for, and that all items of expenditure shown on all his reports were made for the best interests of said ward, and that he be given credit in full therefor; that the court determine the amounts advanced for the support of the ward, and allow the same as a claim against said ward and her estate, together with a reasonable sum for guardian's expenses and for his attorney's fees, and render judgment therefor; that the court will determine that guardian has a lien on the real estate now standing in the ward's name for the payment of said judgment and costs, and for such other and different relief as may be just and equitable.

On November 13, 1942, the cause was tried in the district court for York county to Judge Edmund P. Nuss, of the tenth judicial district, and on March 20, 1943, the court found that the ward is entitled to accounting, and found generally upon the issues for the ward and against the guardian, and that the investment by Joseph S. Phillips, the guardian's predecessor in said trust, of $10,000 of the

ward's estate in the real estate mortgage was unauthorized and was negligently and illegally made, without notice, hearing or order of court; that the guardian Harry I. Hylton did not take the legal steps necessary to protect himself and his ward in the premises, and that his act in receiving said mortgage from his predecessor on May 17, 1932, in its then defaulted condition, and without requiring accounting for same from his predecessor, was improvident, negligent and unlawful, and that thereby the guardian became liable to make accounting in his predecessor's stead for the amount invested in said mortgage, and that the guardian's account should therefore be surcharged with said loan in the sum of $10,000, with 5 per cent interest from May 17, 1932, and should be further surcharged with $964.82 received from his predecessor in cash, but without interest thereon, the total amount so surcharged being $16,385.57.

The court further finds that all items paid by the guardian to the ward for her use and benefit, as set forth in his several reports and accountings, are just and correct, and are approved, and that he have credit therefor, and finds that they amount in the aggregate to $3,102.51, and that items of expenditure incidental to the guardianship, such as bond premiums, court costs, attorney's fees, and allowances to the guardian, are correct and the guardian should have credit therefor upon his final accounting in the aggregate sum of $1,018.85.

The court further finds that the guardian is not entitled to credit upon his accounting for taxes, insurance or repairs upon the real estate, or for expenses incurred to obtain a license to borrow money upon the real estate, nor for interest paid by him on money borrowed, nor to any allowance for his services, or for attorney's fees, or costs since June 3, 1938 (except as hereinbefore allowed to him), nor for any expenditures made by him since the ward's marriage June 3, 1938, except such as were made either directly to the ward or for her direct use and benefit.

It is therefore ordered and adjudged that the guardian's account be surcharged with the sum of $16,385.57; that the

guardian have credit as hereinbefore found; that the ward recover from the guardian the balance thus left due upon his accounting in the sum of $12,264.21, with interest at the rate of 6 per cent; that upon paying the sum of $12,-264.21 into court the said Jean Pauline Beaty and her husband shall execute and deliver to the clerk of the court, for the use and benefit of Harry I. Hylton, a quitclaim deed to the real estate mentioned, and that, until the amount of the judgment is satisfied in full with interest, the ward shall have a lien upon the real estate in question to secure the amount due her upon said judgment with costs.

The assignments of error set out by the guardian, and relied upon for reversal, are the general charges that the judgment of the district court is contrary to the evidence, is not sustained by sufficient evidence, and is contrary to law.

The brief abstract of the pleadings indicates their great length. It is very evident that the conventional rules of pleading were not followed. No motions were made to strike out all except the material facts, and both parties were content to state at length every allegation which they thought would be beneficial.

The material facts set out in our summary were generally supported by the evidence, and there is no material dispute in the testimony as to any important facts in the case. It is clear that there is a very serious loss to the ward, and the decision in the case may be narrowed down to whether the guardian or the ward shall bear the loss, for there can be no middle ground.

A careful study of the entire record in this case shows that this ward, who was left an orphan at about ten years of age, with property of the value of about $11,000, has been exceedingly fortunate in that her first guardian, who was her uncle, as well as her second guardian, who was her uncle's banker and adviser, and who signed the uncle's bond, each have honestly handled the affairs of her estate, and that there is no reflection in the evidence touching the good faith or honesty of any transaction of each of the guardians. In addition to that, each of these guardians took the ward

into his own home, and the last one, although not related by blood, treated her as his own child, and assisted her in securing a high school education, including one year of postgraduate work, and at his own expense advanced sums for her clothing and maintenance when the real estate, upon which he held a mortgage, because of the drouth, produced no income whatever for her support.

Joseph S. Phillips, the ward's uncle and first guardian, was a farmer, in very modest circumstances, owning only a small farm of 60 acres, and was in failing health, and for that reason resigned, and died after his final report in guardianship had been approved. He invested in a $10,000 mortgage upon 120 acres of land, on the advice of the present guardian. This Peterson land was at that time encumbered with a mortgage of $7,000, which was released so that the loan of $10,000 of the ward's money might become a first mortgage, whereupon the $7,000 mortgage was refiled and became a second mortgage, and from the proceeds of this loan of $10,000 the Petersons paid a debt of $1,558.90 to the bank with which Mr. Hylton, the second guardian, was connected.

If the proper investigation had been made, with full disclosure of the facts, irregularities would have been shown in the making of the original loan and of the failure to follow the provisions of law for making such loans, but Mr. Hylton assisted Mr. Phillips to make out all of his reports, including the final report, and as successor guardian accepted the mortgage under which the loss occurred.

The trial court found that the action of the present guardian in receiving the mortgage from his predecessor on May 17, 1932, in its then defaulted condition, with over $850 unpaid and defaulted interest, and without requiring an accounting of the assets in the estate from his predecessor, was improvident, negligent and unlawful.

It appears that no notice, as required by section 38-506, Comp. St. 1929, was ever given to those interested by the county court for Seward county before the original investment of the ward's fund in the mortgage in question was

made, and therefore such investment is not binding upon the ward. *Seward v. Danaher,* 105 Neb. 787, 181 N. W. 941, 37 A. L. R. 441; *Hendrix v. Richards,* 57 Neb. 794, 78 N. W. 378; *Wilkins v. Deal,* 128 Neb. 78, 257 N. W. 486; *Olsen v. Marsh,* 142 Neb. 800, 8 N. W. 2d 169.

In the case of *In re Estate of O'Brien,* 80 Neb. 125, 113 N. W. 1001, it was held that a guardian must apply to and receive from the county court an order authorizing him to loan the funds of his ward, and if he loans his ward's funds without such authority and a loss ensues he is liable therefor. The approval by the county court, without notice to those interested, of the reports of the guardian, wherein he reports such loans of his ward's funds made without an order of the court, is not equivalent to an order of the court authorizing the guardian to make such loans.

Under the facts in this case the duty devolved upon the second guardian to examine with the utmost care the condition of the ward's estate. He should have required a strict accounting from his predecessor, and thereby could have protected himself from liability. But the record shows that the first guardian petitioned the county court for York county (not Seward county, in which he was appointed) to resign, and that Hylton be appointed his successor. This was done, and Hylton accepted and filed his bond of $12,000, all on the same day, May 12, 1932, before the Seward county guardianship was closed.

In this state "A guardian has no authority to sell personal property or invest the funds of the ward's estate without proper order of the county court." *Wilkins v. Deal, supra.*

An investment of a ward's funds in mortgage securities should only be made after application to the probate court and the proper notice given by that court, and after an order has been made by the court authorizing the specific investment and the terms thereof, including the rate of interest to be received therefor.

If a guardian carefully follows an order of the court so made, he will not be held liable, except for loss of the securities themselves through his own negligence. See Dame,

Probate and Administration (3d ed.) 719, sec. 708; *Medow v. Riggert*, 132 Neb. 429, 272 N. W. 238.

The law does not require that a guardian have unusual ability, but he must employ such diligence and prudence as men of ordinary intelligence employ in their own affairs of a similar nature. The accountability of a guardian for the safe keeping and investment of the ward's funds is not measured by his own conceptions of his duty, but he is required at his peril to strictly follow all the requirements of the law enacted by the legislature for the protection and security of a ward's estate.

The duties of a guardian are similar to those of a trustee in the handling of trust funds, and every violation of a duty required of him by law, whether wilful and fraudulent, or done through negligence, or even a violation of those duties which arise by mere mistake, oversight, or forgetfulness, is a breach of trust. See *Whaley v. Matthews*, 134 Neb. 875, 280 N. W. 159.

In such cases, he is not protected merely because he acts in good faith, or upon the advice of counsel. If he is in doubt as to his duties, he can protect himself by obtaining a formal order made by the court according to the provisions of law. 1 Restatement, Trusts, 531, sec. 201.

The case is, therefore, one of those unfortunate ones where one of two innocent parties must suffer. As between two innocent persons, the one must suffer who, by his own acts, conduct, or laches, has made the loss possible. See *Bauer v. Bauer*, 136 Neb. 329, 285 N. W. 565.

The guardian insists that the ward, who had been living in his home, knew every step taken in the investment of her funds, and the borrowing of money for her education, and all other transactions, and that she was willing to have the title of the mortgaged property put in her name. Immediately after her marriage on June 3, 1938, she went to her husband's farm between Scottsbluff and Mitchell, and remained there. The guardian testified that in the latter part of November, 1938, he drove from York county to their farm and delivered to the ward a copy of the reports he had

filed as guardian, and the petition for the final settlement of the estate, and talked the whole matter over with her.

Counsel for guardian in his supplemental brief insists that a ward who receives reports of her guardian concerning investments, and has full knowledge of all transactions, and for a long period of time fails to repudiate his actions is held to have ratified them, and is therefore estopped to question them at a later date, citing 25 Am. Jur. 88, sec. 143, and 128 A. L. R. 46-48, Annotation. To see whether these citations apply to the facts in this case, we will examine the evidence of the husband, George Beaty.

"Q. What was the conversation with reference to this settlement business? A. He came out there and he brought a release for us to sign and a note, and he informed us that we could get a settlement of my wife's estate by signing a note and release and signing it back to him. Q. What, if anything, did he say about holding the land? A. He informed us the land would be held until the note and release was signed; no other settlement."

The testimony of the guardian, Harry Hylton, was as follows: "Q. You had some conversation with Jean Phillips Beaty at the time you were out there in the fall of 1938? A. Yes sir. * * * Q. Didn't you at that time tell them you wouldn't settle it up until approximately $800.00, had been paid to you? A. No. Q. Why did you take out that mortgage and note? A. I took them out to have them executed to pay me for advancements I had paid the estate and for money I had borrowed for the estate. * * * Q. Did you ever tell Jean Phillips Beaty that you wouldn't make a settlement with her except upon conditions? A. Not that I recall. Q. What did you tell her? A. I told her that this money had been advanced and that this much money was coming to me. If she would sign the note and mortgage I would deliver the estate and they could take over the management of it. Q. So you wouldn't surrender the securities or whatever you had until she signed the note and mortgage? * * * A. Yes. Q. And that was in 1938? A. Yes sir."

Also in Mr. Hylton's direct examination when he was re-

called as a witness on behalf of the ward: "Q. I hand you what have been marked exhibits 20 and 21, is that the note and mortgage that you requested her to sign as part of the settlement and adjustment in November, 1938, and as a condition to the settlement, is that right? * * * A. Yes."

This evidence fails to show any ratification of the ward of the acts of the guardian, and shows a demand of the guardian that they must sign a note and mortgage or he would retain possession of the farm. She told the guardian they would think the matter over before they would sign the note and mortgage, and they never did sign the instruments.

The husband of the ward testified that about twice a year after their marriage they drove from their home at Mitchell, Nebraska, to see the guardian at the bank in Gresham, and always for the purpose of demanding the payment to her of the full amount of her estate. The ward never acquiesced therein. It is immaterial what she may have said and done in reference to the guardian's acts while she was a minor. See 25 Am. Jur. 103, sec. 165.

The law relating to estoppel of the ward is that "A sale, though irregular or void, may be validated by the ratification of the party after attaining majority, and cannot, in such case, be disturbed. Thus, the appropriation by the parties, when of age, of the proceeds of the sale, with full knowledge of the facts and circumstances, or acquiescence for many years, will estop them from claiming the land." Woerner, American Law of Guardianship, 293, sec. 88. See, also, *Southwestern Surety Ins. Co. v. Holt,* 88 Okla. 281, 213 Pac. 80.

"Courts watch with great jealousy transactions of guardians with their wards or any dealings between them affecting the estates of the wards. The equitable rules concerning dealings between guardian and ward are very stringent." 25 Am. Jur. 130, sec. 208.

The findings of the trial court are supported by the evidence in every regard, and the judgment is according to law, and it is hereby affirmed.

AFFIRMED.